Taylor v. Spencer.

F. D. TAYLOR *et al., as Partners, etc.,* v. W. W. SPENCER.

No. 14,861    (88 Pac. 544.)

SYLLABUS BY THE COURT.

1. DAMAGES—*Breach of Contract.* Where one party to a contract terminates it wrongfully, the other party, in an action for damages on account of the breach, may recover all the direct and proximate loss sustained on account thereof, including expenses incurred, expenditures made in preparation to perform his part of the agreement, loss of time, and for his own personal services.

2. ———— *Violation of Agreement to Furnish Mineral Waters to a Dealer.* Where the owners of mineral springs agree to furnish water therefrom at a stipulated price and for a definite period to a dealer, who is to have the exclusive right to sell the same at a place named, and such dealer upon the faith of such contract expends large sums of money in preparation for the sale of such water, giving his personal attention thereto, and the owners of the springs, before the expiration of the time limited in the contract, refuse without just cause to furnish the water according to the agreement, and thereby destroy the business, such dealer may in an action for damages against the owners of the water recover all the direct and proximate loss sustained, including expenses incurred in preparing for such business, loss of time, and for his own personal services.

Error from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed January 5, 1907. Affirmed.

### STATEMENT.

THIS action was commenced in the district court of Sumner county, November 21, 1901, by the defendant in error to recover damages sustained on account of the violation of a contract. Many assignments of error have been made, but the real controversy relates to the proper measure of damages applicable under the pleadings and evidence in this case.

The defendants reside in Geuda Springs, and own the springs of medicinal waters at that place. The plaintiff also resided in that city, and for the purpose of placing the waters of the springs upon the market they entered into a contract which reads:

"This instrument, made and entered into by and between Taylor & Reeves, of Cowley county, Kansas, first party, and W. W. Spencer, of Geuda Springs, Kan., party of the second part,

"WITNESSETH: That said first party hereby covenants and agrees to sell and furnish the second party, f. o. b. cars at Geuda Springs, Kan., sufficient mineral waters of the Geuda Mineral Springs to supply the trade of the city of Wichita, Kan., of such springs as required, natural and carbonated, for the period of five years from the first day of August, 1900, at the price of three cents per gallon, and as soon as the quantity so sold exceeds an average of more than two hundred (200) gallons per day the price is to be two and one-half cents per gallon. And when the waters are carbonated the same are to be furnished, but the price to be made to correspond with the additional expenses for all costs incident to such carbonating, bottling, casing, etc. Said Spencer is to have the privilege of renewing this agreement at the termination of said term of five years for the period of another five years on fulfiling his part of this agreement.

"Said Spencer is to furnish the vessels necessary in which to ship such natural mineral waters; to pay all expressage or freight, and is to use his best endeavors to push the sales of said mineral waters in Wichita,

Kan., and is to have the exclusive sale of said waters in said city of Wichita, during the existence of this agreement. Said Spencer is to pay for all advertising and all other expenses made by him in connection with the sale of such waters, settlement to be made and money paid over on each and every of the first days of each month during this agreement.

"*In Witness Whereof*, We have hereunto subscribed our names this first day of August, A. D. 1900, at Geuda Springs, Kan."

The plaintiff after making this contract moved with his son, which constituted his family, to the city of Wichita, and prepared to carry out the contract on his part. To do so it was necessary to provide tanks, jugs, bottles, a delivery wagon, a horse, and also to rent an office, advertise the water, and incur other expenses incident to the proper prosecution of the business. The sale of water under this arrangement continued from August 1, 1900, to November 15, 1901, when the defendants refused to furnish water and the business ceased. The plaintiff then commenced this action.

On the trial in the district court the jury made special findings of fact, among which were the following:

"(5) Ques. If you shall return a verdict for the plaintiff, then state how much you include therein for money paid to the Wichita *Eagle* for advertising. Ans. $35."

"(9) Q. If you shall return a verdict for the plaintiff herein, then state how much you allow him for stationery, cards and tickets purchased in said business. A. $30.

"(10) Q. If you shall return a general verdict for the plaintiff herein, then state how much you include therein for the difference in the price of board between Geuda Springs and Wichita. A. $3.

"(11) Q. If you shall return a verdict for the plaintiff herein, then state how much you include therein for the board of a horse for plaintiff in the city of Wichita. A. $11.

"(12) Q. If you shall return a general verdict for the plaintiff in this case, then state how much you include therein for the horse and wagon for the plain-

tiff used in the business at Wichita, Kan.—that is to say, how much per day and how much in gross. A. $1 per day, $405 in gross.

"(13) Q. If you shall return a general verdict in this case in favor of the plaintiff, then state how much you include therein for office rent paid out by the plaintiff in Wichita, Kan., during the lifetime of the contract. A. $77.50.

"(14) Q. If you shall return a general verdict for the plaintiff in this case, then state how much you include therein for the loss on tanks, bottles, jugs and cases. A. $35.

"(15) Q. If you shall return a general verdict in this case in favor of the plaintiff, then state how much you include therein for loss on value of wagon. A. $30.

"(16) Q. If you shall return a general verdict in this case in favor of the plaintiff, then state how much you include therein as the value of the plaintiff's time for the fifteen months and sixteen days that he was engaged in the business under the contract. A. $1937.50.

"(17) Q. If you shall return a general verdict in this case in favor of the plaintiff, then state how much you include therein while he was idle from the 16th day of November, as he claims, until he got something to do the following June. A. $325."

*Hackney & Lafferty,* for plaintiffs in error.

*Adams & Adams,* and *James Lawrance,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: Twenty-five assignments of error have been presented. Those not relating to the measure of damages raise questions of fact which have been settled by the verdict and findings of the jury, and cannot be reviewed here.

The defendants insist that in any view of the case the plaintiff could recover nominal damages only. The measure of recovery adopted by the court is stated in instruction 15, which in part reads:

"If you find from the evidence in this case that after the execution of the contract introduced in evidence

the plaintiff entered upon the performance of his part of said contract; that he spent money in advertising the merits of said Geuda Springs mineral water; that he expended money in purchasing the necessary equipment so as to carry out the provisions of his part of said contract; that he spent his time and his labor in introducing said mineral water so as to supply the trade of Wichita, and incurred other expenses under the provisions of said contract up and until the time that said defendants refused to ship said water—had complied with all the terms of said contract, then the defendants would not have the right to terminate said contract, and if they did so it was a violation of their part of said agreement and they would be liable to the plaintiff in damages for the amount of such expenditures expended in good faith in reliance upon said contract, less profits, if any, you find accrued to him during the time that said contract was being carried out by said plaintiff. And in this connection you are instructed that the value of plaintiff's time and labor expended in introducing said mineral water and in carrying out his part of said agreement is to be considered by you as legitimate element of expense, which is recoverable the same as money actually expended, if you find for the plaintiff as herein instructed. . . . And you are further instructed that if he was unable to enter a like business or employment at Wichita, Kan., and that he made a reasonable effort to enter such like business or employment, . . . you may allow him such reasonable compensation for lost time after the contract was canceled to the time he was able to secure other employment or engaged in business as you may find he is entitled to under the evidence. . . . You may take into consideration the loss, if any, sustained by the plaintiff in being compelled to dispose of personal property which he had purchased for the purpose of carrying on said business and which after said contract had been broken by said defendants was no longer useful or necessary to the plaintiff."

We do not think this instruction erroneous; the measure of damages therein stated is correct as applied to this case. The plaintiff, in order to carry out the contract, was compelled to go to the city of Wichita to live. It was necessary for him to provide proper equipment for carrying on the business, and to incur ex-

Taylor v. Spencer.

penses in advertising the valuable qualities of the water. These expenses were contemplated by both parties. The plaintiff by the terms of the contract was required to pay all expenses and "to use his best endeavors to push the sales of said mineral waters." The outcome of the enterprise was unknown, but the plaintiff was willing to take the hazard on his part in consideration of the stipulations in the contract on the part of the defendants.

His time was taken from other enterprises which might have yielded remunerative returns. Money was expended which might have been otherwise invested, all upon the faith and expectation of profits to be realized after a permanent trade had been established. If he had been permitted to prosecute the business during the time stipulated in the contract he alone would have been responsible for the results. But after the plaintiff had made the sacrifice and expenditures necessary to the initiation of this new enterprise the defendants wrongfully cut off all the expectations of growth and development entertained by the plaintiff, and left him without business, with useless equipment on hand, with no compensation for the time and effort expended, and his entire investment a failure.

Under such circumstances it seems but fair and reasonable that the defendants should reimburse the plaintiff for all the direct losses sustained by him on account of their wrongful acts. We do not think the instruction of the court overstates these losses. No future profits are included; the inquiry is limited to the actual loss sustained. The rule applicable to such cases was thus stated by Mr. Justice Bradley, in *United States v. Behan,* 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168:

"When a party injured by the stoppage of a contract . . . elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract, including a fair al-

lowance for his own time and services." (Page 345.) "Unless there is some artificial rule of law which has taken the place of natural justice in relation to the measure of damages, it would seem to be quite clear that the claimant ought at least to be made whole for his losses and expenditures. So far as appears, they were incurred in the fair endeavor to perform the contract which he assumed." (Page 344.) "If he chooses to go further, and claims for the loss of anticipated profits, he may do so, subject to the rules of law as to the character of profits which may be thus claimed. It does not lie, however, in the mouth of the party who has voluntarily and wrongfully put an end to the contract to say that the party injured has not been damaged, at least to the amount of what he has been induced fairly and in good faith to lay out and expend, including his own services." (Page 345. See, also, 8 A. & E. Encycl. of L. 637; *Bulkley v. United States,* 86 U. S. 37, 22 L. Ed. 62.)

The general verdict was for $2500; according to the special findings it might properly have been $2889. The court entered judgment in favor of the plaintiff for the lesser amount. This is claimed to be erroneous, but being favorable to the defendants they are not prejudiced thereby, and have no occasion to complain. There are other errors suggested in argument, but they are principally questions of fact which have been settled by the verdict and findings of the jury, and cannot be reviewed here.

We have been unable to find error in any of the matters complained of, and the judgment is affirmed.