KING BROTHERS, *a Partnership, etc., Appellees,* V. THE PERFECTION BLOCK MACHINE COMPANY, *Appellant.*

No. 16,359.

SYLLABUS BY THE COURT.

1. DAMAGES—*Breach of Contract—Expenditures.* Expenditures necessarily made in anticipation of, or in preparation for, the performance of a contract in which default is made or fulfillment prevented are usually recoverable.

2. CONTRACTS—*Rescission—Recovery of Consideration and Expenditures.* Where the rescission of a contract has been lawfully made the party not in fault may recover the consideration paid and necessary expenditures made by him in performing the conditions of the agreement on his part.

3. SALES—*Action to Rescind Contract and for Damages—Return of Property—Possession.* In an action for the rescission of

a contract and for damages incident to such rescission it is not necessary to aver a return of, or offer to return, a machine which the defendant had agreed to furnish and install, but which had not been accepted by the plaintiffs and was not in their possession when the action was commenced.

Appeal from Finney district court; WILLIAM H. THOMPSON, judge. Opinion filed February 12, 1910. Affirmed.

### STATEMENT.

The action is upon a written agreement whereby King Brothers ordered from the Perfection Block Machine Company a machine and attachments to be manufactured, delivered, set up, and put in operation at Garden City for making concrete building blocks, as described in the catalogue of that company. The contract contained the following:

"First party hereby guarantees that said machine when in operation with the necessary fixtures and appliances as shown (including conveying belt for blocks) and directed by them, using five men, will make an average of seventy-five blocks per hour. Said conveying belt, if put in, to be paid for by the party of the second part, outside of this contract price."

The contract provided that King Brothers should pay for the machine as follows:

"The sum of ($5000) five thousand dollars, in the following manner: On signing this agreement (as earnest money), the sum of five hundred dollars; when machine is in operation, and the test proves its capacity to be seventy-five blocks per hour, providing the belt conveyor is used as stipulated above, otherwise sixty blocks per hour, the sum of two thousand five hundred dollars, to be paid in cash. Two thousand dollars on or before September 1, 1907, with 8 per cent interest from March 10, 1907. The second party agrees to advance the transportation charges and immediately on its arrival deliver to the buildings or grounds, this expense to be charged to the first party in final settlement."

It was also stipulated that the defendant should fur-

nish plans for the buildings to be erected by the plaintiffs in which the machinery was to be installed by the defendant, but that the plaintiffs should furnish two men to help the defendant in such installation.

The petition alleged that the machinery was manufactured and shipped to Garden City by the defendant; that its agent proceeded to superintend the building erected by the plaintiffs for the purpose and to install the machinery; and that the agent then commenced to manufacture concrete blocks to test its capacity, the plaintiffs furnishing the material therefor. It was further alleged that after two weeks' trial the defendant was unable to make the blocks as stipulated in the contract; that the machine failed to produce sixty blocks per hour or 600 blocks per day of ten working hours, and never made to exceed 45 blocks per hour or 450 per day, and under ordinary circumstances it could produce no more; and that the blocks so made were defective, unsalable, and a total loss. The petition also alleged that the plaintiffs had made the advance payment of $500 on the machine and had expended $1500 in putting up buildings expressly for the purpose, to their loss of $750, and had suffered damages by the breach of the agreement to the amount of $1995, for which they asked judgment.

The defendant answered by a general denial, and further alleged that the plaintiffs had refused to permit the defendant properly to complete the test of the machine and had wrongfully undertaken to declare the contract at an end, and also alleged that the plaintiffs were indebted to the defendant in the sum of $150 for superintending the erection of the building.

When the case was called for trial the defendant moved for an order requiring the plaintiffs to elect whether the cause of action relied upon was for damages incident to the rescission of the contract or for a breach of warranty. This motion was denied. At the

close of the plaintiffs' evidence the motion was renewed and sustained, when an election was made thus:

"That this is an action for damages occasioned by the rescission of an executory contract by reason of a breach thereof on the part of the defendant."

The issues were submitted to a jury, special findings were made, and a verdict returned for the plaintiffs assessing their damages at $1250, upon which judgment was rendered. A motion for a new trial was denied, and the defendant appeals.

- *J. E. McFadden, William Easton Hutchison,* and *C. E. Vance,* for the appellant.

*Hopkins & Hopkins,* and *Foster, Evans & Dunn,* for the appellees.

The opinion of the court was delivered by

- BENSON, J.: Various errors are assigned relating to the petition, the testimony, the instructions, and the findings.

The petition stated a cause of action. It alleged the contract, the failure of the defendant to comply with its terms, and the resulting damages. It stated the facts constituting the cause of action, as required by the code. (Civ. Code 1909, § 92.) It is argued that the petition ought to have contained an allegation that the plaintiffs had returned or offered to return the property. It was stated, however, that the machinery did not meet the requirements of the agreement, and as there was no averment of acceptance or that possession had been taken by the plaintiffs an allegation that the machinery had been returned would have been inconsistent. The fact that the defendant had placed the machinery in the plaintiffs' building does not necessarily prove a delivery and acceptance, for such installation was necessary to its successful operation by the defendant—a condition precedent to acceptance and payment.

The exceptions taken upon the admission of testimony and to the instructions are based upon the failure of the plaintiffs to return the machinery or to offer to do so, and upon the measure of damages. Whether it was necessary to offer to return the property depended on the possession at the time. If it was still in the hands of the defendant, and not delivered to, or accepted by, the plaintiffs, they could not return it, and an offer to do so would have been an idle ceremony. The court submitted this question of delivery and acceptance fairly to the jury, and it was decided against the defendant's contention. The court instructed the jury fully and fairly concerning the test provided for in the contract to show the capacity of the machine, and the duty of the parties in respect thereto, and submitted the questions whether a reasonable time had been given to the defendant to comply with this condition and whether it had in fact been complied with.

The jury were instructed that if entitled to recover the plaintiffs might be allowed the advance payment made upon the machinery, the amount of freight paid (which by the contract was to be advanced by the plaintiffs and credited upon the price of the machine), and, if they found that the building was erected on purpose for this machinery under the direction and superintendence of the defendant, as alleged, the amount necessarily expended in its construction, less its fair and reasonable value at the beginning of the action; also the sum necessarily paid out by the plaintiffs for labor and material in making the experiments by the defendant in its tests of the machine, less the value of any materials left on hand. Thus the court carefully restricted the damages to the sums advanced and actual expenditures incurred in necessary preparations for executing the contract.

Expenditures necessarily made in anticipation of, or preparation for, the performance of a contract in which default is made or fulfillment prevented by the other

party are usually recoverable. (8 A. & E. Encycl. of L. 637, 638.) Any necessary expense incurred by a contracting party in complying with the contract may be recovered against the party in default. (*Bryan v. South Western Railroad Company*, 41 Ga. 71; *Taylor v. Spencer*, 75 Kan. 152.) In an action on an agreement to construct a melting furnace for a glass factory it was held that for a breach by the contractor the owner might recover, among other items, the expenses incurred and material lost in attempting to operate the furnace, so long as it was reasonably necessary to do so to ascertain whether it could be operated successfully. (*Dixon-Woods Co., Appellant, v. Phillips Glass Co.*, 169 Pa. St. 167.) This is the rule in this state (*Gas Co. v. Glass Co.*, 56 Kan. 614), and in other jurisdictions. (13 Cyc. 63.) It is argued, however, that it has no application in an action to rescind a contract, but that in such an action only advances actually made to the adverse party can be recovered. This view, however, is not supported by citations and is opposed by the authorities. In the second enlarged edition of Bishop on Contracts, § 834, it is said:

"Where rescinding is permissible, and it has been lawfully made by the party not in fault, or unlawfully by the other party, the one entitled may recover back the consideration, or whatever else he has paid on the contract, including compensation for work done, goods delivered, and the like, prior to the rescission."

The author cites many cases under this section. It was held in Michigan, in an action arising upon the sale of a horse as sound, which had been returned because of unsoundness, that the purchaser might recover not only the money paid for the horse but expenditures in transportation, keeping, and medical attendance, for such time as would be necessary to satisfy a prudent man that the horse was worthless. (*Murphy v. McGraw*, 74 Mich. 318.) In *Freeman v. Clute*, 3 Barb. [N. Y.] 424, a party who had purchased

King v. Machine Co.

an engine and boiler, which, when furnished, did not meet the requirements of the contract, recovered not only the amount paid but expenses actually incurred in attempting to put the engine in operation. This opinion has been cited several times with apparent approval by the court of appeals of that state.

In this case the expenses were not only such as ought to have been anticipated by the defendant, but they were required by the agreement itself, and were incurred under the defendant's supervision.

It is contended that the finding of the jury that the plaintiffs never had possession of the machine is contradicted by other findings to the effect that it had been delivered at, and installed in, the plaintiffs' building, and that when it was not in operation the building was locked; that one key was kept by the plaintiffs and one by the defendant's superintendent, but that at the commencement of the action, while one key was still kept by the plaintiffs, it was not shown who held the other. These findings fall short of demonstrating that the plaintiffs were in possession of the machine, and can not be held to overthrow the express finding to the contrary.

Many of the instructions requested were embraced in substance in those given, and the charge of the court was complete, covering all the issues. The findings were supported by competent testimony, and sustain the verdict.

The judgment is affirmed.