CHARLES L. RAINS *et al., as Partners, etc., Appellees,* v. E. B. SCHERMERHORN, *Appellant.*

No. 17,527.

#### SYLLABUS BY THE COURT.

ORAL CONTRACT — *Breach* — *Partial Performance* — *Choice of Remedies.* Where under an oral agreement that they are to receive a written lease for a term of years the lessees of mining property take possession of it with the consent of the lessor and enter upon its operation, upon the refusal of the lessor to execute such lease they may waive their right to specific performance, surrender the property, and recover in an action for breach of contract whatever reasonable expenditures they have made in preparation for taking out ore.

Appeal from Cherokee district court. Opinion filed April 6, 1912. Affirmed.

*H. C. Bowman, E. B. Morgan,* and *Truman T. Burr,* for the appellant.

*William F. Sapp,* and *A. S. Wilson,* for the appellees.

The opinion of the court was delivered by

MASON, J.: The members of a partnership sued E. B. Schermerhorn for damages for a breach of contract, and obtained a judgment, from which he appeals.

The petition alleged in substance that the defendant agreed to give to the plaintiffs a written lease for three years upon a zinc and lead mining property, they to pay him a royalty of twenty-five per cent upon the ore taken out; that with his consent, and in reliance upon his agreement, they took possession of the property and operated it for about three months, incurring considerable expense for repairs and development, in order to put it in such condition that it could be operated at a profit; that after repeated demands he refused to give them a written lease, and finally took possession himself and let the property to other persons. The petition was divided into three counts, each designated as a cause of action. The wrongful conduct charged in each was as already stated, the difference being as to the character of the damages alleged. Recovery was asked in the first count for what the lease would have been worth to the plaintiffs if it had been executed; in the second, for the net loss incurred by the plaintiffs in their operations; in the third, for the value of ore which they had mined, of which the defendant had the benefit. The verdict was for the precise amount asked in the second count, so that evidently nothing was allowed on either of the others, and rulings with reference to them are no longer important.

The answer stated in substance that the defendant made an oral lease to one of the defendants, who took in the others as partners in the enterprise; that the defendant was willing to give them a written lease, but

that they did not ask for it; that they voluntarily abandoned the property; that after the work had been discontinued for about three months he notified them that unless they resumed operations he would forfeit their lease; that about two weeks later he did so; that by unskillful operation they had greatly injured the property, for which injury he asked damages.

The evidence showed that the plaintiffs, after working the property for about three months, ceased operations and never attempted to resume them. There was direct and positive testimony, supported by corroborative circumstances, that this was because the business proved unprofitable. But there was also some testimony that the reason was that the defendant failed to give the plaintiffs a written lease, in accordance with his agreement. The verdict must be deemed to have settled this dispute in favor of the contention of the plaintiffs. The question of law is therefore presented, whether, assuming the facts to be as found by the jury, the plaintiffs were entitled to recover.

In behalf of the defendant it is argued that inasmuch as the plaintiffs, according to their own statement, were in actual possession of the property under an oral agreement, and were not interfered with, they suffered no substantial injury from the omission to provide them with a written contract; that they could not have been dispossessed, and if they had desired could have compelled the execution of a lease by an action for specific performance. We can not regard this argument as sound. A written memorandum of their rights in the property was of obvious importance to the plaintiffs. They could not be compelled to rely wholly upon oral proof of the terms of their agreement. They might well decline to continue to incur expenses in developing a property their title to which might be challenged, if they were to be left without written evidence to defend it. The death of the lessor might have disqualified the lessees as witnesses and disabled them from making any

proof whatever of their contract. The plaintiffs were entitled to insist upon receiving a written lease before they went farther with the matter. If the defendant in fact, deliberately and without excuse, refused to execute a lease, as the jury must be deemed to have found, the refusal amounted to a stoppage of the contract on his part. The plaintiffs were not obliged to resort to an action for specific performance to compel its delivery, and the defendant can not be heard to complain that they did not do so. The choice of remedy lay with them. They were entitled to accept the refusal as final, abandon further performance of the contract, and recover whatever damages they had suffered, including any expenses reasonably incurred in reliance upon it.

"An agreement to lease land for mining purposes, if founded on a valuable consideration, and in the nature of a valid, subsisting contract, will be supported by the courts, and if the party promising to lease afterwards refuse to execute the lease, the promisee under the contract can maintain an action for the specific performance of the same, or recover damages in an action against the promisor for the breach." (White, Mines and Mining Remedies, § 261.)

"When a party injured by the stoppage of a contract . . . elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract." (*United States v. Behan*, 110 U. S. 338, 345.)

"Where by reason of the breach of a contract expenses have been incurred by the injured party, they are, in general, recoverable in an action for damages. So, likewise, are expenditures made in anticipation of or preparation for the performance of a contract in which default is made or fulfilment prevented." (8 A. & E. Encycl. of L. 637; *King v. Machine Co.*, 81 Kan. 809, 106 Pac. 1071.)

"Where a party has contracted to perform certain work and is prevented by the other party to the contract from entering on or completing the same . . . the plaintiff is entitled to recover any direct loss occasioned

by the defendant's failure to perform the contract, including such reasonable expenses as he has incurred in preparing to perform the contract." (13 Cyc. 159, 160.)

The court instructed the jury that the plaintiffs could recover on the third count, for the value of the ore mined by them, of which the defendant received the benefit by taking possession. This would have been a recovery of double damages, as the plaintiffs sued for and recovered the expenditures made in mining this ore as well as in their other work. No prejudice resulted, however, for the jury allowed no damages except upon the second count. Technical accuracy would doubtless have required that in estimating the plaintiff's damages the ordinary operation of the mine and mill, of which they obtained the benefit, should have been left out of account, the income setting off the outlay; that allowance should have been made to the plaintiffs only for the expenditures which were made with a view to future returns, or of which the defendant received the benefit. The plaintiffs were allowed to recover their total net loss, but no prejudice seems to have resulted to the defendant, for he was given credit for what they received from the "turn-ins" they made, and was not charged with anything on account of any clean-up made after he took possession. Moreover, most of the expenses appear to have been made after their last "turn-in." There was evidence that considerable extra work was made necessary by a cave-in, which the defendant charged to have been the fault of the plaintiffs. The verdict, however, must be interpreted as a finding against this contention.

A number of specific rulings are complained of, but none of them is thought to justify a reversal. There was evidence that the plaintiffs tried to induce the defendant to vary the terms of the contract, but the effect of this was for the jury. Complaint is made of the refusal to give instructions to the effect that the plaintiffs could not recover (1) if they quit work because

they found it did not pay, or (2) if one of them told the defendant that he turned the ground back to him. The first proposition was substantially covered by the charge given, and the second placed too much stress upon a single item of evidence. The court gave a positive instruction that if the plaintiffs abandoned the mine for any reason other than that the defendant failed and refused to give them a lease, they could not recover. It is true that the introductory part of the same instruction seemed to imply that there was an issue of fact as to the obligation of the plaintiffs to operate under the lease continuously and in a workmanlike manner, but this resulted from adopting language from the answer and can hardly have obscured the clear presentation of the vital issue with which the instruction concluded. In the next instruction the jury were told that if the plaintiffs failed to operate the property in a workmanlike manner they were liable to the defendant for any resulting damage.

In a special finding the jury said that they allowed the plaintiffs no damages by reason of their being deprived of the leasehold for the full term. An argument is made that this is inconsistent with the general verdict, because it shows that the possession and use of the property were of no value, and therefore the plaintiffs could not have been damaged by being denied a lease of it. The finding means merely that the plaintiffs were not entitled to recover upon what they termed their first cause of action—that their bargain was not so advantageous that its loss was in itself an item of damage.

The judgment is affirmed.