Argued October 15, affirmed November 15, 1973

KWIPCO, INC., *Appellant, v.* GENERAL TRAILER
CO., INC., *Respondent and Cross-appellant.*

515 P2d 1317

*Hardy Myers, Jr.,* Portland, argued the cause for
appellant. With him on the brief were Rives, Bonyhadi
& Drummond, Portland.

*Max S. Taggart, II,* Springfield, argued the cause for respondent. With him on the brief were Sanders, Lively & Wiswall, Springfield.

TONGUE, J.

This is an action by the purchaser of modular house moving trailers against the manufacturer of such trailers for damages for breach of contract and breach of warranty. A jury returned a verdict for plaintiff for $24,867.34. That verdict included $15,000 to compensate plaintiff for its potential liability to Speed Cut, Inc. (its "parent corporation" and the repurchaser from plaintiff of such trailers), for alleged damage to Speed Cut's good will caused by similar breaches of contract and warranty on resale of the trailers by it.

On defendant's motion for a judgment notwithstanding the verdict, the trial court deleted that award of $15,000 and entered judgment for $9,867.34.[1] Plaintiff appeals. We affirm.

Plaintiff contends that a buyer of goods for resale may recover from its seller the amount of the buyer's "probable liability" to a succeeding purchaser caused by breaches of contract or warranty by the initial seller and that this recovery may include liability for damage to the good will of the succeeding purchaser. Plaintiff concedes that this court has not yet ruled upon that question, but contends that such recovery is authorized by the Uniform Commercial Code (ORS 72.7130, ORS 72.7140, and ORS 72.7150),

---

[1] The jury verdict in this case made separate awards for the various claims for damages, including the claim for "Speed Cut's loss of good will," so as to make it possible to delete that item.

and had been recognized "by cases and commentators both before and since the adoption" of the Code.⑨

■ We do not reach that question in this case because we find, upon examination of the record, that there was not sufficient evidence to establish the amount of any alleged damage to the good will of Speed Cut, Inc., even assuming that plaintiff would be entitled to such an award if supported by substantial evidence.

Plaintiff contends that in *Sol-O-Lite Laminating Corp. v. Allen,* 223 Or 80, 353 P2d 843 (1960), this court affirmed an award for damage to the good will of a business and that the amount of the award by the jury in this case of $15,000 as damages to plaintiff for its "probable liability" to Speed Cut, Inc., its parent corporation, for damage to the good will of that corporation is supported by the following evidence:

"(1) After the delivery troubles with General Trailer, National Homes cancelled four trailers from its initial sixteen trailer order [from Speed Cut, Inc.] ;

"(2) After the delivery and warranty troubles with General Trailer, Speed Cut never again made a sale to National Homes, although National Homes had initially indicated it might well provide for up to 500 trailers using the Lewis suspension system; and

"(3) Speed Cut encountered increased buyer concern and sales resistance in the wake of its warranty problems with General Trailer."

---

⑨ In support of this contention plaintiff cites 3 Williston, Sales 377, § 614a (rev ed); 2 Anderson, Uniform Commercial Code 468-69, § 2-715:6 (2d ed); Walpole v. Prefab Mfg. Co., 103 Cal App 2d 472, 230 P2d 36, 42 (1951); Somerville Container Sales v. General Metal Corp., 39 NJ Super 348, 120 A2d 866, 872 (1956), *modified,* 39 NJ Super 562, 121 A2d 746 (1956); Freier v. Shayani, 16 Misc 2d 31, 183 NYS 2d 198 (1958), *aff'd,* 19 Misc 2d 297, 194 NYS 2d 613 (1959).

It appears from the evidence in this case that Speed Cut, Inc., had previously been engaged in the manufacture and marketing of saws and measuring equipment for "automated building of homes." Before it acquired the stock of plaintiff corporation in 1969, it had not been engaged in the marketing of modular house moving trailers.

The trailers were of a new design, using a newly patented suspension system. They were defective in that the axles were too small for the specified load capacity, requiring replacement with larger axles.

There was some testimony that National Homes, a potentially large purchaser, "might" purchase "up to" 500 trailers; that because of "delivery troubles" it canceled four trailers from an order for 16 trailers, and that no further trailer sales were made to it. The sales manager for Speed Cut, Inc., also testified that after one of the original axles had failed, that incident resulted in some sales resistance by potential purchasers.

He testified, however, that he was able to overcome that problem by a demonstration in which he placed the two axles "side by side." The sales manager testified that it was "impossible to tell" whether he lost any orders as a result of that incident. The four trailers canceled by National Homes were also resold at the same price. The sales manager also testified that he sold all the trailers that he had under order and no contention was made that Speed Cut, Inc., was unable to resell all of the trailers sold to it by plaintiff.

There was also no evidence that the net profits earned by Speed Cut, Inc., were adversely affected. On the contrary, the evidence was that its net profits in-

creased from less than $12,000 in 1968 (the year before these difficulties), to $22,000 in 1969, about $35,000 in 1970 and $50,000 for 1971.

 This court has adopted the rule that damages are recoverable for loss of future profits only to the extent that the evidence affords a sufficient basis for estimating the amount of such profits with reasonable certainty.[9] As stated more recently, "* * * the essential ingredient of proof of lost profits to a reasonable certainty is supporting data."[10]

This court has adopted a similar rule for application in cases involving claims for damages to the good will of a business. Thus, in *Levene et ux v. City of Salem,* 191 Or 182, 200, 229 P2d 255 (1951), we said:

> "* * * The evidence must afford sufficient data from which the court or jury may properly estimate the amount of damages, which data shall be established by facts rather than by mere conclusions of witnesses. 25 C.J.S., Damages, 813, § 162. It appears, however, that there is no specific rule for determining the value of good will, and that each case must be considered and determined in the light of its own particular facts. *Schuh Trading Co. v. Commissioner of Internal Revenue,* (C.A.7th) 95 F. 2d 404, 410; 38 C.J.S., Good Will, 953, § 6. Elements which may be considered are, length of time the business has been in existence; the nature and character of the business; its success or lack thereof; its average profits; and the probability of its continuance under the same name. 2 Sutherland, Damages, 4th ed, p. 1459, § 448. Past profits may be established, and the value of the good will esti-

---

[9] See Douglas Const. v. Mazama Timber, 256 Or 107, 115, 471 P2d 768 (1970), and cases cited therein.

[10] Verret v. Leagjeld, 263 Or 112, 501 P2d 780 (1972). See also Brenneman v. Auto-Teria, Inc., 260 Or 513, 516-519, 491 P2d 992 (1971).

mated therefrom as a basis, subject to being reduced by a showing of a depression in trade or other circumstances that would tend to make the business less valuable. 1 Sedgwick on Damages, 9th ed., p. 513, § 254."

In that case a claim for damages to good will, based upon the opinion of the owner, was rejected, holding (at 200-201) that although such an opinion may be stated by the owner of a business it must be based upon sufficient supporting facts and data. Claims for damage to good will were also rejected as based upon insufficient evidence in *Buck v. Mueller,* 221 Or 271, 285, 351 P2d 61 (1960), and *Western Rebuilders v. Felmley,* 247 Or 577, 579, 430 P2d 348 (1967).

Plaintiff relies upon our decision in *Sol-O-Lite Laminating Corp. v. Allen, supra,* in which we said (at 94) that "[t]he extent of damage to good will is not capable of exact proof," citing McCormick on Damages 677, § 176, among other authorities.[9] In that case, however, there was "supporting data" to the effect that during the year in which defective goods were delivered the purchaser of such goods made sales to 150 customers totaling $38,149.15 and that during the following year it did only $11,326.82 worth of business with these same customers. We held (at 91-93) that although that and other evidence was not sufficient to submit to the jury in support of a claim for loss of profits, it was sufficient to support the verdict of $1,000 in that case, in which there was a counterclaim for damages for breach of warranty, including damage to good will.

In this case, however, there was no such "supporting data." There was no evidence that either the

[9] See also White and Summers, Uniform Commercial Code (1973 ed) 321-323, §§ 10-14, and Annot., 17 ALR3d 1010, 1117-119, § 46 (1968).

annual profits or the annual gross sales of Speed Cut, Inc., declined as a result of the breaches of contract and warranty involved in this case.

In the absence of "supporting data" and under the facts and circumstances of this case, as previously stated, we hold that there was not sufficient evidence of damage to the good will of Speed Cut, Inc., so as to make it proper to submit that issue to the jury in this case.[G] We therefore hold that the trial court correctly deleted the award by the jury of $15,000 for alleged damages to the good will of Speed Cut, Inc., in entering the judgment in this case.

Affirmed.

---

[G] Cf. Earle M. Jorgensen Co. v. Tesmer Manufacturing Co., 10 Ariz App 445, 459 P2d 533 (1969).