**William BULLARD, Appellant and Cross-Appellee,**

**v.**

**B. P. ALASKA, INC., Appellee and Cross-Appellant.**

Nos. 5829, 5871.

Supreme Court of Alaska.

Sept. 17, 1982.

C. R. Kennelly, Kennelly, Azar & Donohue, Fairbanks, for appellant and cross-appellee.

Olof K. Hellen and Theodora Accinelli, Hellen & Partnow, Anchorage, for appellee and cross-appellant.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Chief Justice.

William Bullard sued B. P. Alaska, Inc., for back injuries allegedly sustained in a single-car accident on July 18, 1977, at Prudhoe Bay. He argued that his injuries occurred while a passenger in a truck owned by B. P. Alaska, Inc. and operated by its employee, Bob Barth. The accident occurred when the driver failed to negotiate a turn in heavy fog, sending the truck into a ditch and striking the Trans-Alaska Pipeline. The trial court granted Bullard partial summary judgment on the issue of liability [1] and the parties went to trial on the issue of damages.

At the close of the case, the court gave an instruction, over Bullard's objection, that allowed the jury to deny an award of damages if it found that Bullard's alleged injuries were not proximately caused by the accident. The jury subsequently returned a verdict of no damages. Bullard's motion for a new trial was denied and he now appeals. We conclude that Bullard failed to meet his burden of proof on the issue of proximate cause and affirm the judgment below.

I.

Bullard argued that the jury should be instructed that he had sustained some injury as a result of the accident, and that it was required to award him damages compensating him for those injuries. Thus, in essence, he moved for a partial directed verdict.

In reviewing a denial of a motion for directed verdict the role of this court is not to weigh conflicting evidence or judge the credibility of the witnesses. Our role is to determine whether the evidence, viewed in the light most favorable to the nonmoving party, is such that reasonable jurors could not differ in their judgment. If there is room for diversity of opinion among reasonable people, the question is one for the jury, not the court. *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978).

Where facts are conceded or uncontroverted, and there are no circumstances which impeach their weight and credibility, a court may direct a verdict. Where there is conflicting evidence, however, or where the evidence is uncontradicted but competing inferences may flow from it, a court should not direct a verdict. 5A Moore's Federal Practice ¶ 50.02[1] at 50–23, 50–25 to 50–27 (1981); 75 Am.Jur. *Trial* §§ 493, 499, 520–21, 537 (1974).

We thus must examine the evidence to determine whether it was conflicting and if, when viewed in the light most favorable to B. P., it was such that reasonable people could not disagree as to its import.

Bullard alleged that he suffered a broken back as a result of the accident, specifically that the 12th thoracic (T12) and 1st lumbar vertebrae (L1) sustained compression fractures. His credibility, however, was seriously contested and there were sharp conflicts in the evidence.

---

1. Technically speaking the partial summary judgment should have been designated as one of negligence rather than liability, since liability assumes that some damage has been caused by the conduct of the defendant. Prosser, Torts, 143 (4th ed. 1971).

After the accident, Bullard does not remember telling Bob Barth that he was injured. He returned to the work camp and did not seek medical assistance. He claims that he was taken to the camp medic by a security guard, after he was found unconscious in the shower. The security guard, however, testified that he went to Bullard's room to investigate the accident some five-and-a-half hours after it occurred, where he insisted that Bullard be examined by the medic. The medic's examination indicated that Bullard responded to his palpations of the lumbar-sacral area and that there was no pain response in the T12, L1 area, some five vertebrae away. Bullard was subsequently transported to Anchorage, and he attempted to show at trial that this was a "safety precaution" for his back. However, the medic testified that he was concerned about Bullard's lucidity, and not his back. He diagnosed Bullard's condition as resulting from either a cranial concussion or an overdose of alcohol or hallucinogens, and it was for that reason that Bullard was returned to Anchorage.

After his arrival in Anchorage, Bullard was x-rayed at Providence Hospital. The x-rays indicated a compression fracture of the T–12 and L1 vertebrae. There was, however, no radiologist present to evaluate the x-rays and Bullard was not admitted to the hospital. He did not call the next morning for results of the x-ray evaluation. He states that he spent the next month in bed recovering from the injury at a friend's house. Further, he did not seek any medical advice or assistance until September 7, 1977, when he was examined by Dr. Lundquist. In his initial examination, he apparently told Dr. Lundquist that he had seen another doctor, but in fact, had not.

The medical testimony is not clear. Dr. Lundquist's testimony suggests that he had relied on Bullard's statement that the accident had caused the spinal injuries. Dr. Lundquist, however, stated that the x-rays indicated that there were preexisting, minor degenerative changes in Bullard's spine, which were not in the vicinity of the fractures at issue, and that, as to the type of fracture in question, it sometimes is difficult to tell from the x-rays the age of the injury. Dr. von Wichman, who examined Bullard in December, indicated that an x-ray was not helpful in evaluating the degree of healing in this type of injury. Dr. Lundquist noted that little or no particular treatment is generally required for injuries such as Bullard's, and that time is the main factor in healing. Dr. von Wichman's testimony also indicates that Bullard gave him September as the date of the injury and not July.

At one point, Bullard stated in response to interrogatories that he had had only minor past injuries, such as a broken foot and broken arm. In an unrelated legal proceeding, however, he indicated that he had been in four separate plane crashes in which he sustained broken ribs, ankle, and leg, a wrenched shoulder, and a kink in his neck. There were also a number of conflicts in Bullard's answers regarding his work history.

Bullard claimed to be limited in his ability to lift weight as a result of the accident. A number of witnesses testified, however, that Bullard appeared to suffer little physical restriction following the accident. In a barroom fight, he apparently lifted a 195 pound man off his feet and resisted arrest. Other witnesses testified about another incident involving conduct also inconsistent with his claim of physical restriction.

Given the conflicting nature of the evidence presented and the questions raised concerning the credibility of Bullard's testimony, we cannot agree that reasonable persons could not differ in their judgment of the evidence.[2] Therefore, the trial judge's refusal to give the requested instruction was not error. The question of damages was properly left to the jury.

**2.** At one point in the trial, Bullard's own attorney stated: "I think that perhaps the major issue in this case is Mr. Bullard's credibility."

The instruction given[3] allowed the jury to determine whether Bullard's alleged injuries were proximately caused by the accident and, if so, to fix the amount of his damages. Regardless of the fact that the accident occurred and the defendant's negligence is established, the court must still leave the issue of damages to the jury and the plaintiff must prove his actual damages. *Robertson v. Smith,* 40 Ill.App.3d 174, 351 N.E.2d 576, 578 (1976); *O'Neill v. Craig,* 493 S.W.2d 898, 901 (Tex.Civ.App.1973) *cert. denied,* 415 U.S. 919, 94 S.Ct. 1418, 39 L.Ed.2d 474; W. Prosser, The Law of Torts, 143 (4th ed. 1971).

## II.

After the return of the jury's verdict, Bullard moved for a new trial. His motion was denied and he alleges error on three grounds.

First, he argues that the jury was improperly permitted to return a zero verdict, citing *Martinez v. Bullock,* 535 P.2d 1200 (Alaska 1975). He asserts that that case requires a damage award of some sort. Our decision that his requested instruction was properly denied also decides this issue; the question of damages was properly left to the jury, including the possibility of a zero verdict. Further, Bullard ignores the fact that the injuries in *Martinez* were uncontroverted, while they are questioned here.

In *Martinez,* we reviewed *Walker v. Alaska Road Commission,* 388 P.2d 406 (Alaska 1964), quoting the following language:

The record contains substantial and uncontradicted evidence that [Walker] did experience pain, suffering and inconvenience as a result of her injuries. The clear weight of authority holds that a jury award which fails to include a sum for these items of general damages is inadequate or inconsistent when the evidence supporting them is beyond legitimate controversy. Based on our interpretation of the record, we hold that it was error for the trial judge not to have included a sum for [Walker's] pain, suffering and inconvenience in this case. *Id.* at 407 (footnote omitted). Had some element of damage been uncontested in this case, the result might be different. Therefore, because the evidence regarding whether Bullard has suffered any injury is in conflict his argument is without merit.[4]

■ Second, Bullard argues that the jury verdict was the result of passion and prejudice, citing the trial judge's admission of potentially prejudicial evidence over his objection. The trial judge admitted the testimony of witnesses who observed Bullard during a barroom fight and his arrest on an airline flight following a bomb threat by Bullard. The judge limited the testimony of the witnesses to their perceptions of Bullard's physical abilities or limitations during those episodes. No discussion of the criminal aspects of the incidents came before the jury. While this testimony may have had its prejudicial effects, it was clearly probative regarding the extent of injury claimed by Bullard. If such evidence is relevant, reversal is appropriate only where its prejudicial effect so outweighs its probative value that admission of the evidence constitutes a clear abuse of discretion. *F/V*

---

3. The instruction provided:

You are not to award damages for any injury or condition from which the plaintiff may have suffered, or may now be suffering, unless it has been established by a preponderance of the evidence in the case that such injury or condition was proximately caused or aggravated by the accident in question.

4. This factor distinguishes this case from *Grimes v. Haslett,* 641 P.2d 813, 820 (Alaska 1982). In *Grimes* we stated:

Our review of the record discloses that, when the evidence is reviewed in the light most favorable to Haslett, reasonable persons could easily differ as to whether the October 9 collision caused the full extent of Grimes' incapacity, but no reasonable juror could have concluded other than that Grimes suffered at least some damages. Grimes' car was completely stopped when it was struck by Haslett's car traveling at ten to fifteen miles per hour. Such a collision does not occur without some discomfort resulting to the occupants of the car that is struck. By contrast, in the present case, there was no compelling evidence that Bullard had suffered any injury, and no description of the intensity of the automobile accident.

**406**

*American Eagle ADF&G v. State,* 620 P.2d 657, 672 (Alaska 1980), *appeal dismissed* —— U.S. ——, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). The test for relevancy is whether the evidence has some tendency in reason to establish a proposition material to the case. *Id.* Here, we think the testimony presented was properly limited to, and probative of, Bullard's physical capabilities after the accident; its probative value outweighed whatever prejudicial effect it may have had. The trial judge, then, did not abuse his discretion by admitting the testimony.

Finally, Bullard argues that the zero verdict is against the weight of the evidence. A motion for a new trial is directed to the sound discretion of the trial court. *Bolden v. City of Kodiak,* 439 P.2d 796, 800 (Alaska 1968). This court will reverse a ruling on a motion for a new trial only in the most exceptional circumstances and only then to prevent a miscarriage of justice. *City of Palmer v. Anderson,* 603 P.2d 495, 501 (Alaska 1979); *City of Whittier ·v. Whittier Fuel & Marine Corp.,* 577 P.2d at 222. Because the evidence in this case is conflicting and impeached, we are unable to say the zero verdict was so unreasonable and unjust that reversal is required. *Id.*

The judgment is AFFIRMED. This result makes it unnecessary for us to reach the issues raised in B. P.'s cross-appeal.