ALASKA CHILDREN'S SERVICES, INC., Appellant,

v.

Glenn SMART, Appellee.

No. 7433.

Supreme Court of Alaska.

Feb. 3, 1984.

Ernest M. Schlereth, Benj. O. Walters, Anchorage, for appellant.

Timothy Byrnes, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This is an appeal from a jury verdict awarding Glenn Smart $14,490 for lost profits incurred because of the breach of contract by Alaska Children's Services (ACS). ACS claims that the damage award and the jury instructions were improper. We affirm the verdict and the award.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Alaska Children's Services, Inc. is an interdenominational organization which provides housing and care for disturbed and homeless children in the Anchorage area. In the spring of 1981, Dr. John Garvin, the Executive Director of ACS, decided to have the roofs repaired at the "Jesse Lee" campus of ACS. ACS contacted James Clifton, a roofing contractor, to provide recommendations on the necessary repairs. Clifton recommended that the roofs on all of the buildings be replaced. He estimated the cost at $117,000. ACS then decided to request bids on the project and subsequently prepared bidding specifications based on the technical information provided by Clifton.

Glenn Wright, ACS's Property and Maintenance Director, personally solicited bids from a number of Anchorage roofers. The request for bids was dated May 1, 1981 and provided that the bids must be submitted by 4:00 p.m. on May 14, 1981. ACS received three bids: Clifton bid $117,000; Jim McDonald bid $98,697; and Glenn Smart bid $94,988. McDonald's bid was immediately rejected by Garvin as unresponsive to the bid specifications.

The low bid was submitted by Smart. He is a licensed, bonded roofer with eighteen years of experience as a roofer in Alaska. Garvin told Wright to set up a meeting with Smart to talk about the bid. The negotiations and meetings which followed were the focal points of the ensuing lawsuit.

Wright telephoned Smart a few days after the bid closing date to arrange a meet-

ing. Smart was informed that he was the low bidder. He later claims that he was told that he had been awarded the job, though ACS denies this. A meeting was held on May 21 at which Smart, Garvin, Wright and an ACS maintenance man were present. They talked about the starting date for construction and storage alternatives for materials. Smart also discussed alternative processes to the bid specifications.

On June 1, another meeting was held to follow up on Smart's suggested alternatives. Smart submitted two extra proposals reflecting the increased costs of the changes. Garvin alleges that he became increasingly disillusioned with Smart during these meetings although Smart never refused to do the job under the bid specifications. ACS decided not to use Smart for the construction.

Smart says that he had already begun to mobilize for this project. He had lined up twelve men, and had hired five or six persons specifically for this job; ordered materials; paid $12,000—$14,000 for materials; listed the project as a "job in progress" with his bonding company; turned down opportunities to bid on other jobs; prepared and arranged his equipment to be in working order; and told a number of people that he had the ACS contract. ACS had no actual knowledge of these alleged preparations.

ACS contacted Clifton on June 2 and asked him to rebid the project. Clifton was told about the other bids and he rebid at $98,000. He was awarded the contract.

Smart filed suit against ACS in July 1981 alleging breach of contract, promissory estoppel and other theories of recovery. The gravaman of the complaint was that ACS had bound itself to a contract for the replacement of the roofs for two reasons: (1) Smart was the low bidder on the invitation to bid; and (2) ACS had accepted Smart's bid by its subsequent actions. The trial court granted a directed verdict for ACS on a misrepresentation claim and on other minor complaints. The contract and promissory estoppel claims were submitted to a jury. Smart asked for damages representing his lost profit on the contract and the initial expenses in preparing to perform the contract. The jury found that a contract had been formed. They awarded Smart nothing for costs incurred in preparing to perform, but unanimously awarded him $14,490 for lost profits. He was then awarded attorney's fees based on the schedule in Civil Rule 82(a)(1). ACS filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial, which the court denied. ACS then appealed to this court.

On appeal, ACS contends that (1) the lost profit award was improper as based on insufficient evidence; (2) the trial court erred in failing to instruct on mitigation of damages; (3) the jury instructions on contract law incorrectly assumed the truth of a controverted fact; and (4) the trial court erred in supplying a jury instruction that allowed for damages based on cost preparation.

## II. LOST PROFITS

The jury awarded $14,490 for lost profits. ACS filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. One of the grounds set forth in this motion was that the jury could not compute the lost profits on the basis of the evidence before the court. This motion was denied by the trial court.

ACS claims that the evidence was insufficient for the jury to have computed lost profits. To grant a motion for judgment notwithstanding the verdict the court must find that "the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment." *Holiday Inns of America v. Peck*, 520 P.2d 87, 92 (Alaska 1974) (footnote omitted). The standard for granting a new trial is left to the sound discretion of the trial judge and this court has expressed a great reluctance to interfere with the exercise of that discretion. *See Ahlstrom v. Cummings*, 388 P.2d 261, 262 (Alaska 1964).

The evidence as to lost profits in this case was Smart's testimony that his profit on the ACS job would have been between $15,000 and $18,000 and that his normal profit percentage was "usually anywhere from 18 to 25%." His testimony was bolstered by the other witnesses. McDonald, one of the other bidders, said that he had a 25% profit margin built into the bid. Clifton, the contractor eventually hired, also testified that his profit margin was included in his bid.[1]

■ Generally, once the existence of lost profits is established, the actual amount need not be proven exactly. *See Guard v. P & R Enterprises*, 631 P.2d 1068 (Alaska 1981); *City of Palmer v. Anderson*, 603 P.2d 495 (Alaska 1979); *City of Whittier v. Whittier Fuel and Marine Corp.*, 577 P.2d 216 (Alaska 1978). The rule is set forth in *City of Whittier:*

> Thus, lost profits, if proven, may be recovered .... [and] it is not necessary to prove lost profits with exactness so long as actual loss of profits is shown and the jury has a reasonable basis on which to compute its award.

577 P.2d at 222 (footnote omitted).

■ ACS does not deny the existence of lost profits. The sole question is whether the jury had a "reasonable basis on which to compute its award." We answer this question in the affirmative.

The jury had evidence of a bid price of $94,988 and a profit margin of 18% to 25%. From these figures a jury could readily compute the costs of the project and add the profit margin to equal the bid price. For instance, using the 18% profit margin, a construction cost of $80,500 plus 18% of that cost, or $14,490, equals $94,990. This is only $2 off from the actual bid and the $14,490 is what the jury awarded in this

case. ACS contends that since the cost of the project was not exactly known the jury had no "reasonable figure upon which to multiply its 18% estimation." As shown above, given the total cost and a profit percentage, a jury could compute the costs of the project on its own.

There are a number of cases where courts have accepted as sufficient evidence a profit estimate made by the contractor.[2] While this may seem onerous to the defendant in a case, as stated in *City of Whittier:*

> We will not require that a plaintiff in a contract suit present an accountant's balance sheet in order to substantiate his damages. Once actual damages are shown and there is a reasonable basis for computing an award, a defendant's opportunity for pre-trial discovery of the evidentiary basis for the amount claimed, the right to cross-examine witnesses and to present evidence, as well as the judge's duty to instruct the jury on the issue of certainty provide adequate protection against speculative verdicts.

577 P.2d at 224 (footnote omitted).

We find that the jury had a reasonable basis for computing the lost profit award and affirm the trial court's denial of the motions as to this issue.

### III. MITIGATION OF DAMAGES

■ ACS also contends that the trial court erred in not instructing the jury on the duty to mitigate. The duty to mitigate damages is a well-recognized rule of contract law in Alaska. *Anchorage Independent School District v. Stephens*, 370 P.2d 531, 533 (Alaska 1962). The duty rests on the party claiming damages but the burden of proving mitigation or failure to mitigate falls on the breaching party. *West v. Whitney-Fidalgo Seafoods*, 628 P.2d 10, 18

---

1. Clifton did not realize the profits he had anticipated. The project ran longer than originally estimated and severe weather further delayed the completion. Smart testified, and the trial court agreed, that he would have "completed the roof before the rain and hence realized a larger profit margin" than Clifton.

2. *See Universal Computer Systems v. Medical Services Ass'n of Pa.*, 474 F.Supp. 472 (M.D.Pa. 1979); *General Sprinkler Corp. v. Loris Industrial Developers*, 271 F.Supp. 551 (D.S.C.1967); *Nelson v. Cail*, 120 Ariz. 64, 583 P.2d 1384 (Ariz. App.1978); *ArtCraft Cabinet v. Watajo, Inc.*, 540 S.W.2d 918 (Mo.App.1976); *Wilfin, Inc. v. Williams*, 615 S.W.2d 242 (Tex.Civ.App.1981).

(Alaska 1981); *University of Alaska v. Chauvin*, 521 P.2d 1234, 1240 (Alaska 1974).

 ACS has not met its burden of proving that Smart did mitigate his damages or that he failed to attempt to do so and the trial court properly refused to instruct the jury on the duty. During the conference on instructions ACS brought up the issue of mitigation. Mr. Walters, the attorney for ACS, stated:

> Mr. Walters: Well, ... of course, another problem I'm going to have is to whether or not we see—whether or not it is necessary in a trial like this in order for Defendant to recover—to recover loss of profits, that he must show that there was no—of course, we know about the law and rule of mitigation of damages. If he made as much money during the same period of time that he would've made....
>
> The Court: Where's the evidence?
>
> Mr. Walters: Well, there isn't any—or anything else! ...

This was a frank admission that the evidence did not support a mitigation instruction. In light of this admission and the lack of evidence of mitigation we find no error in the trial court's failure to instruct on mitigation.

## IV. JURY INSTRUCTION ON PROMISES

 In instructions on the enforceability of promises [3] the court referred to "a promise made by the Defendant" and "Defendant's promise." ACS contends that these references assumed that a promise had actually been made when that issue was the focal dispute in the case.

We find no merit to this claim. The instructions, when viewed as a whole, clearly inform the jury that they must decide whether a promise was made. As the court stated, the jury must find "that the Defendant promised Plaintiff that the Plaintiff would be hired to do the roofing job on Alaska Children's Services buildings."

The judgment is AFFIRMED.[4]

3. The jury instructions read in pertinent part: The law does not enforce all promises, it only enforces those promises made by one person to another under either of two different circumstances. You must decide in this case if either circumstance exists. If either exists, then the law will enforce a promise made by the Defendant.
Now I will explain the first circumstance. The law will enforce a promise made by the Defendant if that promise was that part of a contract. There was a contract if you decide that it was more likely than not; 1. that the Defendant promised the Plaintiff that the Plaintiff would be hired to do the roofing job on Alaska Childrens' Services buildings; ...
If you decide all of these things are true, then there was a contract and the law will enforce the Defendant's promise. If there was a contract, you need not consider the second circumstance in which the law will enforce a promise. Otherwise, you must consider this second circumstance. The law will enforce Defendant's promise if you decide that it is more likely than not; 1. that the Defendant promised the Plaintiff that he would be hired to do the roofing job on the Alaska Children's Services buildings; ...

4. The final point raised by ACS was that the court erred in instructing that damages include the cost of preparation. This point has no merit since the jury specifically awarded damages based on lost profits alone.