Argued July 9, reversed December 15, 1971

BRENNEMAN ET AL, *Respondents, v.*
AUTO-TERIA, INC., *Appellant.*

491 P2d 992

*William E. Flinn,* Eugene, argued the cause for appellant. On the briefs were Flinn & Lake.

*Robert J. McCrea,* Eugene, argued the cause for respondents. On the brief were Mulder, Morrow & McCrea.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

McALLISTER, J.

This is an action for breach of warranty and breach of contract arising out of the sale of an auto-

matic carwash unit to Bre-Bar Developers Co., Inc. Plaintiffs Brenneman and Barnes were the sole owners of Bre-Bar, which has now been dissolved, and are now the owners of the corporation's assets. Defendant is the manufacturer of the carwash equipment.

The case was tried to a jury. Plaintiffs claimed that they purchased the equipment from defendant, that the equipment failed to work properly, and that plaintiffs have as a result suffered damages in the form of lost operating profits, lost profits on the resale of the property where the carwash facilities were installed, and expenses incurred in preparing the land for that installation. The jury found for defendant and judgment was entered on the verdict.

Plaintiffs then filed a timely motion for a new trial on the ground that one of the jury instructions was erroneous. The trial court granted the motion and ordered a new trial. Defendant appeals, assigning as error the order granting a new trial and the trial court's failure to grant its motion for a directed verdict. We hold that the motion for a directed verdict should have been granted. We, therefore, do not reach the questions raised by the order granting a new trial.

Bre-Bar purchased a parcel of land in the Eugene area to develop for ultimate resale. Several commercial establishments were constructed on the land. In connection with this development, Bre-Bar in 1967 negotiated with Robert Carnahan for the purchase of equipment for a carwash facility. Although the issue was disputed by the parties, we assume for purposes of this opinion that Carnahan was, as contended by plaintiff, an agent of defendant. On September 12, 1967, Bre-Bar placed an order with Carnahan for carwash equipment manufactured by defendant, includ-

ing, in addition to the automatic unit involved in this case, two self-service units. The equipment was delivered and installed on Bre-Bar's property, and Bre-Bar paid for it in full.

The automatic carwashing unit never functioned properly and Bre-Bar never was able to put it into commercial use. Bre-Bar complained to Carnahan and defendant and in February 1968 plaintiffs met with Carnahan and defendant's president, Mr. Amy. At that meeting it was agreed that the defective automatic unit would be replaced by another type of automatic carwash unit, also manufactured by defendant, and that Bre-Bar would pay only the installation costs for the conversion. The conversion equipment arrived and was installed, but it also failed to operate properly. This action followed.

After both parties had rested, defendant moved for a directed verdict in its favor on the ground that plaintiffs had failed in their proof of damages. We hold that the motion should have been granted.

■ The major item of damage claimed by plaintiffs was loss of profits in the operation of the carwash facility. Proof of such damages was the subject of the opinion in *Buck v. Mueller*, 221 Or 271, 351 P2d 61 (1960), an action for damages for breach of a covenant to renew a lease. Plaintiff, the tenant, had operated a restaurant on the leased premises for about two years. He testified that during that period his net profit averaged $287 a month; however, this figure did not take into account the food eaten at the restaurant by plaintiff and his wife, or the reasonable value of their services in operating the restaurant. If those amounts had been deducted the resulting figure would have been a net loss. The court said:

"* * * If, upon a new trial, the plaintiff can

show no better record than he does by the evidence he produced in this case, he is not entitled to get to the jury on the question of damages for loss of profits. Such a record does not show an 'established' business which is a requirement of proof where plaintiff proposes to project his loss into the future on the basis of the business experience of the past. * * *" 221 Or at 284-285.

In *Buck v. Mueller* the court reviewed the general rules applicable to a claim for lost profits:

" "* * * the *actual evidence* must be such that reasonable men, acting upon inference and not from guess, can find therefrom that damage did thus result, and can derive therefrom substantial data for fixing the amount.' [Quoting from McCormick on Damages, 100.] * * * On the other hand, 'It is not a sufficient reason for disallowing damages claimed that they cannot be exactly calculated. It is sufficient if, from proximate estimates of witnesses, a satisfactory conclusion can be reached * * *.' Brown v. McCloud, 96 Or 549, 552, 190 P 578 (1920). * * * Past profits may be shown if they reflect the operation of an established business. * * * If the business has not operated long enough to establish a reliable record of profits, the jury will not be permitted to speculate upon the probable success of the particular business alleged to have been harmed. * * *" 221 Or at 282-283.

In the present case the business was not an "established" one with a record of past profits. It was an entirely new venture.[1] Plaintiffs' accountant testified

---

[1] Although the language in Buck v. Mueller suggests that lost operating profits can be recovered only in the case of an established business with a record of past profits, it should be permissible, although often difficult, to prove that a new business would have earned profits. Although the courts have sometimes refused to permit recovery of lost profits on the ground that the profits of a new business are necessarily too speculative (see 1 ALR 156, supplemented 99 ALR 938), others have recog-

from the accounts kept for Bre-Bar. Although the records as to the operation of the carwash facility were admittedly incomplete, it is clear from the accountant's testimony that the two self-service units operated at a loss while owned by Bre-Bar. There is nothing in the record to indicate that if the automatic unit had worked the carwash business would have been a profitable operation. Plaintiffs failed to prove any basis upon which the jury could have awarded them lost operating profits.

The next item of damage claimed by plaintiffs is lost profits on resale of the real property on which the carwashing complex was installed. Plaintiffs' supplemental amended complaint, upon which the case went to trial, did not allege any facts concerning the resale of the land or its value with or without an operational automatic carwash unit. Plaintiffs alleged that as a result of defendant's breach of warranty and breach of contract, they had suffered "loss of profit to date" in the amount of $38,145. Under this allegation they sought to recover both lost operating profits and lost profits on resale of the real property.

At the trial defendant objected to plaintiffs' evidence concerning the sale of the land on the ground that it was not within the scope of the pleadings. Their

nized that the question in each case is simply whether or not prospective profits can be proved with reasonable certainty. See, e.g., Smith v. Onyx Oil and Chemical Company, 218 F2d 104, 111 (3d Cir 1955) 50 ALR2 216; Standard Machinery Co. v. Duncan Shaw Corp., 208 F2d 61, 64 (1st Cir 1953); Burks v. Sinclair Refining Co., 183 F2d 239, 242 (3d Cir 1950); see, also, Jennings v. Lamb, 201 Tenn 1, 296 SW2d 828, 831 (1956); Ferrell v. Elrod, 469 SW2d 678, 685-686 (Tenn App 1971); McCormick on Damages 107-108, § 29; 11 Williston on Contracts 249 § 1346A (3d ed 1968); Comment, Lost Profits as Contract Damages: Problems of Proof and Limitations on Recovery, 65 Yale L J 992, 1018 (1956).

objection was overruled, and defendant does not assign this ruling as error on appeal. Therefore, without in any way implying approval of the trial court's ruling on the objection, we consider the sufficiency of the evidence as to lost profits on resale of the land.

There is evidence that the property was sold to an automobile dealer on December 1, 1969, and that the buyer did not purchase the nonfunctioning automatic equipment as part of the transaction. Both plaintiffs testified that in their opinion the automatic equipment added no value to the land. Barnes testified that in his opinion the value of the land would have been increased by $50,000 if the automatic unit had been operating properly. He also testified, however, that when the land was sold the "listed sales price" had been discounted by the amount Bre-Bar had expended on the automatic unit. We are unable to determine the precise amount of this expenditure, but it is clearly much less than $50,000.[2] The price received by plaintiffs for the property does not appear, nor is there evidence of any market for the property at a higher price if the automatic unit had been working.

Barnes gave no reasons or supporting data for his opinion that the value of the land would have been increased $50,000 if the automatic unit had worked. In the absence of any evidence as to what plaintiffs actually received for the property, we hold this unsupported opinion to be inadequate to support an award of damages for lost resale profits. In *Douglas Const. Co. v. Mazama Timber Prod., Inc.,* 256 Or 107, 471 P2d 768

---

[2] The order form, which is in evidence, shows the total cost of the automatic and self-service equipment as $30,618. Of this amount $17,045 is identifiable as the cost of equipment for the automatic unit.

(1970), plaintiff claimed as damages lost profits upon the improper termination of a contract to help build a logging road. Plaintiff's president, a man who had 31 years experience in the business, testified to the approximate amount of profit the company would have made had the contract been completed. This court held his testimony insufficient to support a verdict, stating that lost profits must be proved with "reasonable certainty." 471 P2d at 771. The opinion points out that plaintiff produced no facts or supporting data—simply his own estimate—and that the business involved was a highly speculative one. See, also, *Gilmore v. Cohen,* 95 Ariz 34, 386 P2d 81, 11 ALR3d 714 (1963). Similarly, in this case we have only the unsupported estimate of one of the plaintiffs. There is no showing that the automatic carwash unit could have operated at a profit, no showing of a market for carwash facilities, and no showing as to what plaintiffs actually made or lost on the sale of the property. The jury could not have awarded lost profits on this transaction.

The final item of claimed damage is Bre-Bar's expense in preparing the land for the installation of the automatic unit. The preparations included laying a concrete slab upon which the carwash building was placed. Barnes testified that Bre-Bar had the necessary site preparation work done at a cost of at least $4,500, and that the automatic carwash unit took up approximately one-third of the area of the carwash facility. Plaintiffs sought to recover $1,500 as the portion of this expense allocable to the automatic unit.

■ Recovery of out-of-pocket expense may be had as damage for breach of contract in a proper case. *United States v. Behan,* 110 US 338, 4 S Ct 81, 28 L Ed 168 (1884); *C. C. Hauff Hardware, Inc. v. Long Man-*

*ufacturing Co.,* 260 Iowa 30, 148 NW2d 425 (1967);
*Norton & Lamphere Const. Co. v. Blow & Cote, Inc.,*
123 Vt 130, 183 A2d 230, 234-235 (1962). Expenses
which may be recovered include those necessary to
prepare for performance of the contract. Cases allow-
ing recovery for expenses similar to those claimed here
include *L. Albert & Son v. Armstrong Rubber Co.,* 178
F2d 182, 17 ALR2d 1289 (2d Cir 1949) (buyer allowed
to recover cost of installing foundation for machines
which were not delivered); *Vilter Mfg. Co. v. Abeel,*
191 F 272 (5th Cir 1911) (purchaser of defective ice-
making plant allowed to recover cost of tearing down
old building, value of the old building, and cost of con-
struction of new building for installation of the ice
plant); *King Bros. v. Perfection Block Mach. Co.,* 81
Kan 809, 106 P 1071 (1910) (purchaser of defective
manufacturing machine could recover expense of con-
structing buildings specifically to house the machine);
*Clark v. Ohio Prefabricated Homes Corporation,* 54
Ohio Abs 120, 84 NE2d 251 (1949) (purchaser of pre-
fabricated house allowed to recover from defaulting
seller expense of preparing footings for foundations).
See, generally, on recovery of expenses of preparation,
Annotation, 17 ALR2d 1300; 5 Corbin on Contracts 188-
200 § 1031; Restatement, Contracts, 525 § 333.

■ Under the above authorities, the cost of prepar-
ing the land for installation of the automatic unit is a
proper element of plaintiffs' damage. Their damage
is not, however, the total cost of the preparatory work;
any value or benefit to plaintiffs resulting from the
work done on the land must be deducted. As pointed
out by Williston:

   "* * * In any event, the recovery allowed for
   preparatory work or materials should not include
   the value of any part thereof or of any product

thereof remaining in the plaintiff's hands." 11 Williston on Contracts 352, § 1363A (3d ed 1968).

See, also, *Vilter Mfg. Co. v. Abeel* and *King Bros. v. Perfection Block Mach. Co.,* both supra.

■ The record is silent as to the value, if any, added to the land by the work in question. We conclude that the burden was on plaintiffs to prove this item and that they did not carry their burden. In *Kulm v. Coast-to-Coast Stores,* 248 Or 436, 432 P2d 1006 (1967), a similar question was considered. That was an action by a lessor for breach of an agreement to renew a lease. The plaintiff proved the amount of rent reserved by the agreement, but did not introduce evidence of the market value of the leasehold. The court held that the measure of damages was the difference between the two figures, and that plaintiff had the burden of proving the necessary data from which his damages could be calculated. The opinion notes that this is not so in all cases. In actions for breach of personal service contracts, for example, a wrongfully discharged employee is not required to prove that he could not have obtained employment elsewhere. The demands of the labor market are so varied that courts will not assume that other employment is available. It is up to the defendant employer to prove that the plaintiff had or could have had employment elsewhere. *Quick v. Swing,* 53 Or 149, 99 P 418 (1909).

The rule is otherwise, according to the *Kulm* case, under circumstances where offfsets to the total expectancy under the contract are normal—for example, where loss of profits is the measure of damages. In such cases the plaintiff must prove all the necessary figures so that his damages can be computed.

■ Following the distinction drawn in *Kulm,* we

hold that the present case is one in which the burden of proof is on the plaintiffs. The expenses for which they claim reimbursement were for improvements to land. The normal or usual effect of improvements to land is an increase in the land's value. Plaintiffs' damage cannot be computed without knowing the value, if any, of the concrete work and associated site preparation to the owner of the land. Plaintiffs should have proved the amount of that added value, or that the improvements were worthless for any purpose except in conjunction with defendant's automatic carwash. Since they did not do so, the amount of their damage could not be determined.

We hold, therefore, that plaintiffs' evidence on each item of alleged damage was insufficient and that defendant's motion for a directed verdict should have been granted. It follows that the jury's verdict for defendant should not have been disturbed, and that plaintiffs were not entitled to a new trial.