Argued April 26, affirmed June 1, reconsideration denied July 14, petition for review denied September 1, 1976

HANKINS, *Respondent,*

*v.*

CITY OF NEWPORT, *Appellant.*

(No. 33190, CA 4970)

549 P2d 1297

*George M. Joseph,* Portland, argued the cause for appellant. With him on the briefs were Richard C. Bemis and Bemis & Breathouwer, Portland, and Paul B. Osterlund and George W. Henderson, Toledo.

*James H. Clarke,* Portland, argued the cause for

respondent. With him on the brief were Robert E. Maloney, Jr., Vawter Parker and Dezendorf, Spears, Lubersky & Campbell, Portland, and Gordon Macpherson and Litchfield, Macpherson & Carstens, Newport.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

**FOLEY, J.**

This action was initiated by plaintiff for loss of profits allegedly resulting from the breach of a lease agreement by defendant City of Newport. After jury trial plaintiff had a verdict and a judgment for $55,000. Defendant appeals assigning as error a number of determinations made by the trial court which relate primarily to the terms of the lease agreement and the amount of damages resulting from the alleged breach. We affirm.

In 1956 plaintiff, who had been in the nursery and commercial landscape business since 1932, became interested in marketing a variety of coastal pine growing on a portion of the fenced 115 acres of the City of Newport airport not occupied by runways and buildings. Plaintiff initially harvested trees on this property pursuant to an informal arrangement with the lessee of the airport until the city terminated that lease. For a short time thereafter the city permitted plaintiff to continue removing trees from the airport property.

In 1963 plaintiff entered into a formal agreement with the city for a five-year period to expire on May 30, 1968, "* * * for the purpose of growing and harvesting nursery stock and trees * * *." The rental was $500 per year plus 25 cents for each tree harvested in excess of 2,000 trees per year. The agreement was subject to cancellation by either party upon one-year's written notice.

After entering into this agreement, plaintiff worked extensively with a small number of employes harvesting the trees and preparing them for future sales. Plaintiff testified that during this period he substantially limited his annual sales in order to maintain a high price for the trees.

On April 11, 1966, plaintiff sold trees on the airport property to George Garfield for $1,000. Garfield agreed to harvest the trees (estimated at 5,000 in

number) within a one-year period. He removed a total of 500 to 800 trees at various times when plaintiff was present on the property. In March 1967 Garfield sued the city for allegedly damaging some of the trees he had purchased from plaintiff. Shortly thereafter, on April 20, 1967, the city attorney for Newport, pursuant to instructions from the city council, sent plaintiff a letter cancelling the agreement on the ground that plaintiff had breached it by allowing Garfield to enter the premises. Plaintiff did not attempt to remove any trees after receiving notice of the termination and in December 1967 he tendered to the city his rental payment for the final year of the agreement.

## BREACH

■ Several of defendant's assignments of error are based on its contention that plaintiff breached the lease agreement by selling a block of trees on the airport property to Garfield. Defendant urges that the following nonassignment clause forbade plaintiff from making the Garfield sale.

"* * * [L]essee hereby agrees that he will not assign his lease, nor underlet, or permit any other person or persons to occupy or use the same, without the consent of said lessor or those having an estate in the premises, being first obtained in writing."

At trial defendant took exception to the court's instruction to the jury that the words "occupancy or use" in the nonassignment clause were synonymous with "possession" and that the agreement prohibited a transfer of the possession of the real estate. Apparently defendant's theory was that the agreement between the parties was not a lease but a license or permit for removal of trees which plaintiff did not own until they were removed from the property. We conclude, however, that the agreement was a lease which conferred a possessory interest in the property and that the terms of the lease agreement did not prohibit plaintiff from selling blocks of trees in the ground to third persons. *See Re Estate of McDermid,* 109 Or 633, 222 P 295 (1924). Since the sale to Garfield was not a breach

of the lease agreement, defendant's cancellation of the agreement was actionable.

■ Secondly, defendant contends that the trial court erred in allowing plaintiff's motion to strike defendant's affirmative defense based on the following provision of the lease agreement:

"IT IS UNDERSTOOD AND AGREED that the lessor shall have no liability or responsibility to the lessee for any damage to lessee's trees on said leased premises which may result from any use of said leased premises by the lessor or other lessee's or any other person whether such use is authorized by the lessor or not so authorized. The lessor shall have no liability to the lessee whatsoever for any damage to lessee by the lessor, other tenants or any other person, firm or corporation lawfully or unlawfully on said premises."

The city's argument that this provision of the lease protected them from liability for wrongfully terminating the lease is not persuasive. Indeed, as plaintiff points out, such an interpretation is manifestly unreasonable in light of the lease provision requiring defendant to give one-year notice of termination and the mutual promise of the parties to carry out all terms of the agreement. We view this provision as a standard exculpatory clause relieving defendant from liability for injury to plaintiff resulting from its own negligence. Such an exculpatory clause will not be expanded beyond the clear and unequivocal meaning of its terms. *Waterway Terminals v. P. S. Lord,* 242 Or 1, 406 P2d 556, 13 ALR3d 1 (1965); *see also,* Annotation, 49 ALR3d 13, 21 (1973).

## DAMAGES

■ Defendant's principal contention on appeal is that the evidence produced by plaintiff was insufficient to support the amount of plaintiff's judgment for loss of future profits. Abundant authority is cited for the proposition that damages are recoverable for loss of future profits only to the extent that the evidence affords a basis for estimating the prospective profits with reasonable certainty. *Verret v. Leagjeld,* 263 Or

112, 501 P2d 780 (1972); *Pearson v. Schmitt,* 259 Or 439, 487 P2d 84 (1971); *Sachs v. Precision Products,* 257 Or 273, 476 P2d 199 (1970). Furthermore, defendant points to the requirement that a plaintiff claiming lost profits must produce reasonably available data in support of his claim to decrease the possibility that the jury will drift into the uncertain waters of speculation. *See Kwipco, Inc. v. General Trailer Co.,* 267 Or 184, 515 P2d 1317 (1973); *Verret v. Leagjeld, supra; cf. Jenks v. Larimer,* 268 Or 37, 518 P2d 1301 (1974).

Plaintiff testified that he would have removed all of the marketable trees from the airport property prior to the expiration of his lease had the city not breached the lease agreement. He made a field count of the marketable trees on the leased premises in late 1966 and classified them according to wholesale price lists from the catalog of Alfred Teufel Nursery, the largest nursery-stock broker in Oregon. Of the estimated 300,000 trees on the property, plaintiff's testimony indicated that approximately 36,000 were of merchantable quality. His plan was to sell one-third of the trees directly to buyers who were willing to purchase large numbers of trees off the property. The remaining trees would have been moved to Portland for replanting on a 40-acre tract available to plaintiff and then sold over a three-year period.

Plaintiff's evidence indicated that the difference between the market value of the trees and the cost of marketing amounted to approximately $124,000. Market value was determined by applying the pertinent wholesale price shown in the catalog of the nursery-stock broker. Mr. Richard Chord, sales manager for a local nursery business, testified on behalf of plaintiff that Teufel's catalog was a dependable guide to market value. He also testified that the average value of the marketable trees (which he estimated at 25,000 in number) was $5.50 to $6 each and that a normal sale of the trees would gross plaintiff between $160,000 and $175,000.

Plaintiff established his total expenses in removing and marketing the trees at $119,600. This figure included $30,000 for digging up the trees destined for Portland, $12,000 for shipping, $5,000 for handling and placing the trees in the fields, $21,600 for care over a maximum three-year period, $30,000 for ultimate sale in Portland and $9,000 to be paid the City of Newport at the contract rate of 25 cents per tree over 2,000 trees per year. The cost of caring for and selling the 12,000 trees remaining in Newport was approximately $12,000. Mr. Chord, who had on numerous occasions purchased quantities of trees as large as the number in question, testified that plaintiff's overall estimate of marketing costs was "very realistic." Defendant did not cross-examine plaintiff about any additional costs which would be incurred in marketing the trees nor did it offer any evidence contravening plaintiff's estimates.

The evidence introduced by plaintiff afforded the jury with an adequate basis for determining plaintiff's loss of future profits with reasonable certainty. The jury was provided with two estimates of market value, one arrived at by the plaintiff, an experienced nurseryman, based on the market leader's catalog, and the other by an expert witness who based his testimony on his own estimate of the value of the marketable trees on the airport property. These estimates provided the jury with ample supporting data from which it could reasonably arrive at its own assessment of the profits lost by plaintiff as a result of defendant's breach of the lease agreement. *Kwipco, Inc. v. General Trailer Co., supra; Verret v. Leagjeld, supra; see also Schafer v. Sunset Packing,* 256 Or 539, 474 P2d 529 (1970); *Cross et ux v. Harris,* 230 Or 398, 370 P2d 703 (1962).

We have considered defendant's remaining assignments of error and conclude that they do not warrant discussion.

Affirmed.