Argued and submitted July 6, affirmed December 5, 1984

SCHUBBE,
*Respondent,*

*v.*

DIESEL SERVICE UNIT CO.,
*Appellant.*

(A8205-02729; CA A29776)

692 P2d 132

Monica M. O'Brien, Portland, argued the cause and filed the briefs for appellant.

Marianne Bottini, Portland, argued the cause for respondent. With her on the brief was Bottini and Bottini, Portland.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiff was fired the day he returned to work after a two and a half month absence due to a compensable workers' compensation injury. He sued under ORS 659.121(1) for an order restraining defendant from continuing its unlawful employment practice and reinstating plaintiff on his job with an award of back pay. The trial court found that plaintiff was terminated because he filed a claim for workers' compensation, which is an unlawful employment practice under ORS 659.410. We review *de novo*[1] and affirm.

Defendant is engaged in the business of selling, maintaining and repairing trucks. Plaintiff began work as a cleanup person for defendant after graduating from high school in 1979. After four months he was promoted to the position of shop clerk. By all accounts he performed well in those positions. In July, 1981, plaintiff, with strong support from his supervisors, was accepted into the apprenticeship program for heavy duty diesel truck mechanics, which is run through the State Apprenticeship and Training Division of the Bureau of Labor and Industries. In 1981, defendant employed approximately 200 employes, 85 of whom were apprentice mechanics. Plaintiff's rate of pay nearly doubled when he entered the apprentice program. He previously had received two small raises during the nearly two years that he had worked.

In late August, plaintiff saw several doctors about a problem he was having with his hands. One told plaintiff that he considered his condition to be work related and advised him to file a workers' compensation claim for a bilateral carpal tunnel syndrome. Plaintiff filed a claim, and it was accepted. His immediate supervisor, Busch, had encouraged him to file a claim with his private health insurer instead of a workers' compensation claim. Busch and another supervisor, Stassens, both complained on several occasions to plaintiff about his filing the compensation claim. They mistakenly believed that the condition was not work related.

On September 21, 1981, plaintiff discontinued work to have surgery performed on both wrists. He did not return to

---

[1] *See Wincer v. Ind. Paper Stock Co.,* 48 Or App 859, 862-63, 618 P2d 15 (1980).

work until December 11, 1981. During that time, he was advised by his supervisors to continue his apprenticeship diesel mechanic night classes at a community college, and he did so. When he was released for work and reported to Stassens, he was informed that he did not have a job, because he was said to have a poor attitude and four to six months earlier had allegedly worked small amounts of unauthorized overtime. The overtime policy of defendant requires that employes work overtime only when asked. Plaintiff was supposed to have his immediate supervisor, Busch authorize any overtime before he worked it. In May, 1981, he worked .7 hours of unauthorized overtime, 1.9 hours in June, 1.3 hours in July, and .3 hours in August. During that time defendant recognized that there was a general problem with abuses of the company's overtime policy. The management discussed the problem with plaintiff's entire shift. There was also testimony that plaintiff's supervisors had mentioned the subject to him informally on two other occasions. Apparently plaintiff responded to management's requests, because in September, 1981, he worked only .9 hours of overtime that was properly authorized by Busch. At least eight other employes worked unauthorized overtime between May and September. None of them was fired.

■   Defendant contends that plaintiff was not fired for filing a workers' compensation claim but rather because he had worked unauthorized overtime and exhibited a bad attitude. We conclude, however, on *de novo* review, that plaintiff would not have been discharged but for defendant's discriminatory motives of retaliation for his filing a workers' compensation claim. *See Vaughn v. Pacific Northwest Bell Telephone,* 289 Or 73, 92, 611 P2d 281 (1980). The record indicates that his supervisors were displeased with his decision to file a claim, and they expressed their displeasure to him on a number of occasions. We agree with the conclusion of the trial court:

> "Well, I've heard all the testimony in this case and it is my best judgment that this man was, in fact, terminated because he filed a claim to the Workers' Compensation Commission and not for any other reason.
>
> "This man may have been — the evidence is equivocal on that point, where he may have punched in some overtime that he was not specifically authorized. But if he did, it got to be

less and less of a problem toward the end of his employment. And it would clearly be indicated that he was complying with the directions of his foreman and Mr. Stassens, himself. In the month of September, the last month he worked there, he punched in overtime on two occasions, and it was specifically authorized by Mr. Busch. It would be incredible to me to think that six months later, or what would be, three months, four months later, that he would be fired for that reason when he had, by the records, themselves, demonstrated that he was substantially, if not totally, complying with the directions of his employer in that regard."

■ Defendant more cogently argues that the trial court erred in awarding money damages in the amount of $20,417.08. Defendant contends that in making that award the trial court made four false "assumptions": (1) Plaintiff would have received all of the regularly scheduled pay raises, which occur every six months in the diesel mechanic apprenticeship program; (2) he would have worked five days every week, including at least 12 holidays, from December 14, 1981, to July 7, 1983, the period for which lost wages were awarded; (3) he would not have been subject to company layoffs; and (4) he would have received full hourly pay without reducing that amount by any withholding required by federal and state laws.

At the close of trial, the trial judge requested counsel for both parties to submit letters advising the court on what relief would be appropriate in this case. Defendant had an opportunity to challenge the trial court's "assumptions" at that time but did not do so. Moreover, plaintiff established at trial what the regularly scheduled pay raises for the apprenticeship program were and, although there was testimony that those raises occur "only if achieved," defendant offered no showing that plaintiff would not have done so. Defendant's argument that plaintiff was wrongly awarded lost wages for 12 holidays is also not supported by the evidence. Although it was plaintiff's burden to prove his damages, defendant offered no evidence on the company's holiday pay policy, and time cards introduced by plaintiff indicate that at least journeymen mechanics were paid for some holidays. Finally, it was defendant's burden to prove that plaintiff's hourly pay would have been reduced by withholding, and it did not carry that burden.

As for defendant's contention that plaintiff's award should be reduced by 20 percent to account for layoffs, we

conclude on *de novo* review that the evidence does not support such a reduction. The only evidence properly before the court[2] that is relevant to that issue is testimony by plaintiff's supervisor Thomas R. Stassens that there were some layoffs and the payroll records of Thomas M. Stassens, his son. Those records were introduced by plaintiff. Although there are several gaps in the younger Stassens' payroll records, when he received no pay for a week or two, there is no other evidence or testimony indicating that those gaps were attributable to company layoffs which would support reducing plaintiff's back pay award. We will not do so on the basis of the marginal evidence available to the trial court and us.

■ Defendant's final argument is that plaintiff failed to search diligently for employment after his termination and thus failed to mitigate his damages. Defendant concedes that it had the burden to prove that the plaintiff failed to mitigate and could have obtained employment elsewhere. *Quick v. Swing*, 53 Or 149, 99 Pac 418 (1909); *see Brenneman v. Auto Teria, Inc.*, 260 Or 513, 522, 491 P2d 992 (1971). The uncontradicted testimony of plaintiff and his witnesses was that he had made numerous efforts to obtain mechanic's work and finally got a job as a race car mechanic on February 7, 1983. Defendant offered no evidence that plaintiff could have obtained other employment, but argues that plaintiff should not have limited his search to diesel mechanic positions and that he should have "lowered his sights" and sought employment in line with his previous work experience as a member of a cleanup crew and a shop clerk. Having failed to produce evidence that plaintiff could have obtained such other employment, defendant has not carried its burden, and we need not decide what was the extent of plaintiff's duty to mitigate.

Affirmed.

---

[2] Defendant attached the payroll records of an employe just senior to plaintiff to its post-trial letter advising the trial court about appropriate relief for plaintiff. Plaintiff objected to the use of those records, which had not been introduced at trial. They are not properly before us.