Argued and submitted June 8, affirmed October 17, reconsideration denied
December 26, 1990, petition for review denied February 5, 1991 (311 Or 150)

In the Matter of the Arbitration between
Harold Schnitzer Properties
and Tradewell Group, Inc.
and Food Services of America, Inc.

## HAROLD SCHNITZER PROPERTIES,
*Respondent,*

*v.*

## TRADEWELL GROUP, INC.,
and Food Services of America, Inc.,
*Appellants.*

(A8811-06187; A61184)

799 P2d 180

Gordon T. Carey, Jr., Portland, argued the cause and filed the briefs for appellants.

Jacob Tanzer, Portland, argued the cause for respondent. With him on the brief were Sarah J. Ryan, Kenneth M. Novack and Ball, Janik & Novack, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Tradewell Group, Inc. and Food Services of America, Inc. (Tradewell) appeal from a circuit court judgment confirming an arbitration award of damages to petitioner Harold Schnitzer Properties (Schnitzer) in a dispute arising out of Tradewell's premature abandonment of leased premises.

Schnitzer owns the San Raphael Shopping Center in Portland, in which Tradewell was the anchor tenant. The lease contained a "continuous occupancy" clause, requiring Tradewell to "conduct its business in the leased premises on a continuing basis during the full term of the lease," which was to expire in 1990. Tradewell breached it by vacating the premises in 1986 and by paying rent only through September, 1987, despite a provision in the lease requiring payment of rent for the entire lease term.

The lease contained a provision requiring arbitration of any "disagreement or difference," and Schnitzer initiated an arbitration proceeding, seeking damages for Tradewell's breach. A panel of three arbitrators awarded Schnitzer compensatory damages for rent due under the lease and consequential damages for Tradewell's breach of the continuous occupancy clause. Pursuant to *former* ORS 33.320,[1] Schnitzer petitioned the circuit court to confirm the arbitrators' award. The trial court confirmed the award, over Tradewell's objections. Tradewell appeals, and we affirm.

Under Oregon's Arbitration Act, ORS 36.300 *et seq,* judicial review of an arbitrators' award is limited. ORS 36.355 provides, in part:

"(1) Within the period specified in ORS 36.350, the party against whom an award was made may file with the circuit court exceptions in writing to the award for any of the following causes:

"* * * * *

"(d) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

---

[1] *Former* ORS 33.320 was renumbered ORS 36.355 in 1989. Throughout the remainder of this opinion, we refer to ORS 36.355.

"(e)   There was an evident material miscalculation of figures * * *.

"(f)   The arbitrators awarded upon a matter not submitted to them, unless it was a matter not affecting the merits of the decision upon the matters submitted."

Tradewell contends that all of its objections are reviewable under one or more of the three quoted subsections. Each assignment of error relates to the arbitrators' award of consequential damages and their calculation of those damages to include lost profits, based on lost rents from other tenants as a result of Tradewell's vacating the shopping center.

■■   Tradewell first contends that the lease contains a "liquidated damages" clause that provides Schnitzer's exclusive remedy.[2] Arbitrators have the power to decide both the law and the facts submitted to them. *Brewer v. Allstate Insurance Co.,* 248 Or 558, 561, 410 P2d 547 (1968). The meaning of the lease regarding liquidated damages and the availability of consequential damages is a question of law or, in the event of an ambiguity, a question of fact. In either case, it is a question for the arbitrators, not a court, to decide. Although we might analyze the question differently, or might reach a different result, we cannot review the arbitrators' decision that consequential damages are available under the lease.

---

[2] Article 19 of the lease provides, in part:

"Upon the termination of the estate as aforesaid, Lessor may re-enter the leased premise with or without process of law using such force as may be necessary, and remove all persons and chattels therefrom, and Lessor shall not be liable for damages or otherwise by reason of re-entry or termination of the terms of this lease. Notwithstanding such termination, the liability of Lessee for the rent provided for hereinabove shall not be extinguished for the balance of the term remaining after said termination, and Lessor shall be entitled to recover immediately as liquidated damages an amount equal to the minimum rent for the said balance of the term less the fair rental value of the premises for the said balance of the term."

Tradewell argues that that language limits Schnitzer's damages to unpaid reserved rents. However, Article 19 also provides:

"All rights and remedies of Lessor herein enumerated shall be cumulative and none shall exclude any other right or remedy allowed by law, and said rights and remedies may be exercised and enforced concurrently and whenever and as often as occasion therefor arises."

The arbitrators took note of the first quoted portion; they concluded, however, that the second quoted portion was broad enough to permit an award of consequential damages. We note that the first quoted portion of Article 19 applies only when the *lessor* terminates the lease on the happening of certain events justifying termination. Thus, it has no direct application to the circumstances here.

■ Tradewell contends, further, that the arbitrators acted in "manifest disregard" of Oregon law in concluding that consequential damages are available for breach of a lease and thereby exceeded their authority. ORS 36.355(1)(d). The law with respect to the recovery of consequential damages for breach of a commercial lease is not as one-sided as Tradewell represents. Oregon treats a commercial lease as a contract and, in the absence of a provision in the lease to the contrary, ordinary contract principles apply. *See U.S. Nat'l Bank v. Homeland,* 291 Or 374, 631 P2d 761 (1981); *Wright v. Baumann,* 239 Or 410, 398 P2d 119 (1965); *Sunset Fuel & Engineering Co. v. Compton,* 97 Or App 244, 775 P2d 901, *rev den* 308 Or 466 (1989). There is support for the view that consequential damages in the form of lost profits are available in Oregon for the breach of a commercial lease. *See Wall v. S.E.C. Co.,* 270 Or 553, 528 P2d 1054 (1974); *Hankins v. City of Newport,* 25 Or App 561, 549 P2d 1297, *rev den* (1976).

In any event, the question on appeal is not whether we would have reached the same result as the arbitrators did in deciding whether consequential damages are available. As the Supreme Court said in *Brewer v. Allstate Insurance Company, supra,* 248 Or at 562, arbitrators act within their authority "not only when [they decide] a question of law correctly according to judicial standards, but also when [they apply] the law in a manner which a court would regard as erroneous." The arbitrators' decision that consequential damages are available for breach of a lease is not subject to review.

■ Tradewell also contends that the arbitrators erred in determining that plaintiffs' consequential damages should be calculated on the basis of lost profits. There was no submission agreement designating the issues to be decided. Nevertheless, Tradewell argues that Schnitzer never contended that consequential damages should be measured by lost profits; therefore, it contends, the arbitrators decided a matter not submitted to them and thereby exceeded their authority. ORS 36.355(1)(d); ORS 36.355(1)(f).

Contrary to Tradewell's contentions, the record shows that, although Schnitzer's primary position was that it was entitled to consequential damages measured by the loss of market value, it also raised the issue of lost profits as a measure of consequential damages several times in the course of the

proceeding and clearly regarded lost profits as a component of consequential damages.[3] The parties could have anticipated

[3] In its prehearing memorandum, Schnitzer argued:

"Lessor is seeking to recover the extensive damages he suffered from the breach - *not only* loss of *Tradewell's rent of $245,531.57 over the life of the lease* * * * *or even the consequential loss of the rent of other tenants dependent on the draw of the anchor of $1,404,998* * * *. The damages to which Lessor is entitled is the $2,100,000 in diminished value to the Center which was a direct and foreseeable consequence of Tradewell's breach * * *." (Emphasis supplied.)

In an addendum to that memorandum, to illustrate the correctness of basing consequential damages on diminished market value, Schnitzer argued that a measure of damages based only on lost profits would not be adequate and that loss in value would have to be considered as well:

"[The 'Lost Income and Lost Value'] approach [as distinct from the diminished value approach] measures the difference in net operating income which Lessor would have received but for the breach and that which it is likely to receive after the breach because there is no anchor tenant on the property. If Tradewell had continuously occupied the premises with a chain store supermarket until the end of the lease term the Lessor would have had the projected income and a viable center as he had five years to plan for Tradewell's departure and make reasonable arrangements for it - including advance arrangements for at least a neighborhood grocer. This method would be incomplete if it utilizes only lost rent in that it does not illustrate the lost value component. Thus to accept reduced center net operating income of $1,424,998 over the Tradewell term due to the loss of an anchor tenant is not appropriate. The Lessor will still have lost value [of $2,100,000] at the end of the lease term greater than he would suffer were he to rebuild now. This approach shows damages substantially greater than the diminished value approach."

Thus, although Schnitzer's contention was that damages measured by lost profits would not be adequate, it clearly regarded lost profits as a component of consequential damages.

In *its* prehearing memorandum, Tradewell stated:

"The landlord here is not merely seeking lost rent, *he also seeks consequential damages for diminished rent revenues* received from other tenants in the shopping center." (Emphasis supplied.)

In his opening argument, Schnitzer's counsel stated:

"The net operating income has dropped and is dropping. The 1988 projections of which Mr. Spears will testify show a net operating income of [$]130,000 per year now from almost a half million dollars per year. I would submit, gentlemen, that a reasonable inference which can be drawn from those facts is that the *decline in revenue and value* is a direct consequence of Tradewell's breach of the continuous occupancy clause of the lease." (Emphasis supplied.)

In his opening argument, Tradewell's counsel responded to Schnitzer's contention regarding damages:

"The lease itself is very expressive in what damages are recoverable. I mean, it sets forth the measure of damages, there is no doubt about it, it's unequivocal, it's in black and white and says, the difference between the fair rental value and the amount stipulated in the lease. *There is nothing in there about after appraised value, there is nothing there about consequential losses because of lost rent * * *."* (Emphasis supplied.)

Schnitzer presented evidence from which damages based on lost profits *or* loss in value

that the arbitrators would consider whether consequential damages should be measured by the loss of market value or only by lost profits. We conclude that the arbitrators had before them the question of whether loss of value or lost profits was the appropriate measure of consequential damages and that, in awarding consequential damages based on lost profits, they did not consider a matter not submitted to them. Therefore, they did not exceed their authority.

■ Finally, Tradewell contends that the award includes reserved rent twice, because, in addition to awarding Schnitzer the unpaid rent reserved in the lease, the consequential damages awarded for lost profits also included, in part, the same reserved rent. Therefore, it claims, Schnitzer was allowed a double recovery by a "material miscalculation of figures." It concedes that it made no such argument to the arbitrators until it requested reconsideration after the award was made.

First, we cannot tell from the arbitrators' separate and careful analyses of the two types of damages awarded whether, or to what extent, Schnitzer obtained a double recovery. Second, Tradewell claims that it raised the issue in its cross-examination of one of Schnitzer's expert witnesses. Our review of that part of the record does not support its claim. As the arbitrators pointed out in their order denying the motion to reconsider:

> "We have found that [Schnitzer] clearly separated its claims for reserved rent and lost profits, but we have found virtually no suggestion by [Tradewell] at the hearing or thereafter in argument that this would amount to double recovery. An inference to that effect can be drawn from the portion of Mr. Spears' cross-examination quoted by Mr. Carey in his reply (page 5), but not even this inference was pointed out to us early in our deliberations."

They went on to state that they could not say whether, if the argument had been made during the proceeding, it would have influenced their decision. It is not our function to determine whether it would have. We cannot say that the arbitrators'

---

could be determined. Jordan, Schnitzer's expert witness, testified concerning the loss in value of the shopping center. Another witness testified that the shopping center had experienced a loss in income over the relevant time of approximately $1.5 million. Tradewell was free to, and did, cross-examine both witnesses.

total award was an "evident material miscalculation of figures" that would permit us to review it under ORS 36.355(1)(e).

Affirmed.[4]

---

[4] We deny Schnitzer's request for a judgment pursuant to ORS 19.160 for 10 percent of the underlying judgment. We express no opinion as to the effect of ORS 36.365:

> "Whenever no objection is made to the entering of judgment after award, judgment shall be entered according to the award and shall have the force and effect of a judgment obtained in the circuit court after default. Whenever any judgment is entered after objection on the part of any party by the order of such court, such judgment shall be subject to appeal to the higher courts in the manner provided by law for taking appeals to such courts. The right to except to or review an award or to appeal from a judgment thereon shall not be circumscribed or abridged by any contractual provisions; nor shall any burden or penalty, other than such as are provided by law, be imposed by anyone against any party which excepts or appeals."