Argued and submitted January 25, affirmed on appeal; remanded in part on
cross-appeal and otherwise affirmed July 21, 1993

## Russell M. SULLIVAN
## and Jean M. Sullivan,
*Appellants - Cross-Respondents,*

*v.*

## OREGON LANDMARK-ONE, LTD.,
*Respondent - Cross-Appellant.*

## (CV 90-1296; CA A73165)

856 P2d 1043

R. Tim Willis, Corvallis, argued the cause and filed the briefs for appellants - cross-respondents.

Kim E. Hoyt, Salem, argued the cause for respondent - cross-appellant. With her on the brief were William D. Brandt and Ferder, Ogdahl, Brandt & Casebeer, Salem.

Before Rossman, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

This is an action by tenants against a landlord for damages for breach of a commercial lease agreement. The case was tried to a jury, which returned a verdict in favor of plaintiffs, the tenants. Defendant, the landlord, moved for a judgment *n.o.v.* and, in the alternative, a partial judgment *n.o.v.* eliminating part of plaintiffs' damages. The court allowed the alternative motion, but only in part. Plaintiffs appeal and defendant cross-appeals. We affirm on the appeal but remand on the cross-appeal.

In stating the facts, we view the evidence in the light most favorable to plaintiffs and accord them the benefit of all favorable inferences that the jury could have drawn from it. *Green v. Uncle Don's Mobile City*, 279 Or 425, 427, 568 P2d 1375 (1977).[1]

In November, 1989, plaintiffs met with defendant's leasing agent, Steve Young, to discuss whether defendant would be willing to make improvements to a space in a building that it owns. Plaintiffs wanted to operate a restaurant and bookstore in the space. Plaintiffs told Young that they had never run a restaurant before and that they would be doing substantial work to get the new business up and running. After extensive negotiations, the parties entered into a commercial lease agreement dated February 23, 1990. Defendant agreed to make specified improvements to the building at its expense and to lease the building to plaintiffs beginning April 1, 1990. Plaintiffs promised to make certain improvements at their expense as well.

Plaintiffs spent many hours preparing to operate the restaurant. They studied books on how to operate a restaurant, tested recipes, obtained financing, purchased equipment and performed myriad other tasks associated with the new business. They also spent numerous hours preparing to perform their remodeling obligations under the contract. They spoke with designers, reviewed building code requirements, negotiated with contractors and suppliers of building

---

[1] Because defendant did not rest after plaintiffs had presented their case, but presented additional evidence in its defense, we look at all of the evidence. *Clarizo v. Spada Distributing Co., Inc.*, 231 Or 516, 523, 373 P2d 689 (1962); *Scholes v. Sipco Services & Marine, Inc.*, 103 Or App 503, 506, 798 P2d 694 (1990).

materials and performed various other tasks associated with their contractual obligations.

Plaintiffs incurred expenses associated with all of those tasks, including bills for telephone, postage, license fees, legal fees and interest on capital investment loans. They also purchased equipment and supplies and other miscellaneous items, such as plants and books.

In October, 1990, defendant determined that it would cost about twice as much as anticipated to complete its remodelling tasks. It then informed plaintiffs that it would not perform. Plaintiffs abandoned their plans, sold much of the equipment that they had acquired and repaid their investors with interest.

Plaintiffs then filed this action for damages. They claimed that defendant breached the lease agreement by refusing to make the improvements. Plaintiffs claimed that they were entitled to compensation for all the work they performed from the time the contract was made through the date that defendant repudiated it. They referred to that compensation as "hours expended" damages. Plaintiffs' evidence of those damages consisted principally of a list that identified each task they performed, the level of skill they believed the task required and an hourly wage they considered appropriate compensation for each skill level. They then multiplied the number of hours devoted to each task by the appropriate dollar per hour value. Plaintiffs also sought damages for their expenses, such as telephone and postage, as well as the difference between the amount it cost them to acquire the equipment less the amount they recovered on resale. They referred to those damages as "out-of-pocket" damages.

At the close of plaintiffs' case-in-chief, defendant moved for a directed verdict, which the trial court denied. Defendant renewed the motion at the close of all the evidence. The trial court denied that motion as well and instructed the jury to find that defendant had breached the lease agreement. On a special verdict form, the jury awarded $17,230 for hours expended damages and $2,502.26 for out-of-pocket damages.

Defendant moved for judgment *n.o.v.* and, in the alternative, a partial judgment *n.o.v.* eliminating the hours

expended damages. The court did not disturb the jury's award of out-of-pocket damages, but reduced the hours expended award from $17,230 to $5,997.74. The court then entered judgment for plaintiffs for $8,500.

■ Plaintiffs assign error to the trial court's grant of defendant's motion for partial judgment *n.o.v.* On appeal from a judgment *n.o.v.*, we will reinstate the jury's verdict unless there is no evidence to support it. *Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977); *King v. All Pro Services, Inc.*, 120 Or App 479, 483, 852 P2d 943 (1993). Plaintiffs argue that the trial court should have denied defendant's motion in its entirety, because they are entitled to recover the full value of their labor for the tasks that they performed in reliance on the lease agreement, and their testimony concerning the value of that labor is sufficient to support the jury's verdict in their favor. Defendant argues that, although losses incurred in preparation for performance of a contract may generally be recoverable, plaintiffs' claim for the value of their labor fails for a complete absence of proof. We agree with defendant.

■ The purpose of awarding damages for breach of contract[2] is to compensate for loss to the injured party. *Carter v. Wolf Creek Hwy.*, 54 Or App 569, 573, 635 P2d 1036 (1981). That loss may be expressed in terms of different legally cognizable interests. Contract remedies may, for example, be designed to protect an injured party's "expectation interest," often expressed as the party's interest in receiving the benefit of the bargain. *Shook v. Travelodge of Oregon*, 63 Or App 137, 144, 663 P2d 1280, *rev den* 295 Or 541 (1983). *See also Restatement (Second) Contracts* § 344(a)(1979). Expectation interest damages put the injured party in the position he or she would have been in had the contract not been breached. *Siler v. Turnbull*, 71 Or App 787, 790, 693 P2d 1323 (1985). Alternatively, contract remedies may be fashioned to protect an injured party's "reliance interest." *Brenneman v. Auto-Teria, Inc.*, 260 Or 513, 520-21, 491 P2d 992 (1971). *See also Restatement (Second) Contracts* § 344(b) (1979). Reliance interest damages put the injured party in the position he or

---

[2] A commercial lease is a contract and, unless it contains a provision to the contrary, ordinary contract principles apply. *Harold Schnitzer Properties v. Tradewell Group*, 104 Or App 19, 23, 799 P2d 180 (1990), *rev den* 311 Or 150 (1991).

she would have been in had the contract not been entered. *Restatement, supra* at § 344(b). They may include out-of-pocket expenses incurred in reliance on the agreement, particularly those expenses that were necessary to prepare for performance of the contract. *Brenneman v. Auto-Teria, Inc., supra,* 260 Or at 520-21. *See also Annot.,* 17 ALR 2d 1300 (1951), 17-18 ALR 2d Later Case Service 188 (1987); 5 Corbin *Contracts* § 1031 (1964).

■       Here, plaintiffs do not claim any expectation interest damages. Instead, they seek compensation for their losses incurred in reliance on their lease agreement with defendant, including the value of their time spent in preparation for performance of that contract. The only evidence of their loss, however, was their own opinion testimony concerning the value of their services. That evidence, by itself, is insufficient to establish that plaintiffs suffered any losses in reliance on the lease agreement. There is no evidence that plaintiffs quit their jobs to spend time preparing to operate the new restaurant. Plaintiffs were, in fact, unemployed when they entered into the agreement. There is, likewise, no evidence concerning the amount of money plaintiffs would have made elsewhere, had they not invested their time in preparing to operate the restaurant. Plaintiffs' opinion testimony concerning the value of their time is just that, and nothing more. It does nothing to establish that they actually would have been paid anything for their time had they not relied on their lease agreement with defendant. They have, in short, failed to produce any evidence of damages that would place them in the position they would have been in had the lease agreement never been executed.

The authorities that plaintiffs cite illustrate those very deficiencies in their case. In *Hough v. Jay-Dee Realty and Investment, Inc.,* 401 SW2d 545 (Mo App 1966), the plaintiff entered into a lease agreement with the defendant to locate a new restaurant. In reliance on the agreement, the plaintiff closed his established restaurant and devoted time and effort to preparing to open the new business. When the defendant later repudiated the agreement, the plaintiff recovered not the economic value of his labor, but rather the money he had foregone by closing his restaurant. Similarly, in *Nevin v. Bates,* 141 Colo 255, 347 P2d 776 (1959), the plaintiff left

her ongoing beauty salon business for a month in reliance on the defendant's promise to lease new space to her. When the defendant breached that lease agreement, the plaintiff recovered damages, measured by the income lost from her ongoing business while she worked on the new location. In both cases, the plaintiffs' reliance damages were supported by testimony concerning the loss of money that they otherwise would have received. There is no such evidence from plaintiffs here.

Plaintiffs' reliance on *Convoy Co. v. Sperry Rand Corp.*, 672 F2d 781 (9th Cir 1982) is also misplaced. In that case, the court allowed the plaintiff to recover the money it paid its employees to provide services that would not have been necessary had the defendant's software package worked as promised. Thus, the plaintiff was awarded damages in order to put it in the position it would have been in had the contract been fully performed. Such damages protect a party's expectations, not its reliance interests. *See generally Restatement (Second) Contracts* § 348(2) (1979). *Convoy*, therefore, is irrelevant.

Because there is no evidence that plaintiffs suffered any loss of income by relying on the lease agreement, we cannot reinstate the jury's verdict for "hours expended" damages.

Defendant cross-appeals, assigning error to the trial court's failure to grant its motions for directed verdict and the motion for judgment *n.o.v.* in its entirety. According to defendant, the court should not have permitted recovery of any of the hours expended damages because those damages were not proven adequately at trial. Defendant argues that the trial court should not have allowed damages for plaintiffs' out-of-pocket expenses either, because those damages were not reasonably foreseeable.

We agree with defendant that the trial court erred in permitting any recovery of hours expended damages. As we have explained, there was no evidence of lost income incurred in reliance on the lease agreement. The trial court, therefore, erred in failing to eliminate all of the hours expended damages.[3] We do not agree, however, that the trial court erred in

---

[3] Because we reverse the trial court's disposition of the "hours expended" award on its merits, we do not comment on the procedure that was followed. We note

allowing recovery of the out-of-pocket expenses. There was testimony that plaintiffs informed defendant's property manager that they intended to do substantial work in preparation for performance and that he knew of plaintiffs' efforts. There also was evidence of the amount of expenses plaintiffs actually incurred. That evidence is sufficient to support the award of the out-of-pocket expenses. Therefore, the trial court did not err in denying the motion for directed verdict and the motion for judgment *n.o.v.* concerning that category of damages.

■■ ■■ Defendant also assigns error to the trial court's decision to allow plaintiffs to amend their complaint at trial to include an allegation that, once defendant repudiated the lease agreement, they were excused from further performance under the agreement because of defendant's breach.[4] We review for abuse of discretion. *Hall v. Fox*, 106 Or App 377, 380, 808 P2d 99 (1991). The trial court allowed the amendment after concluding that it did not introduce any new issues to the case and, thus, should have come as no surprise to defendant. The trial court did not abuse its discretion in reaching that conclusion.

Affirmed on appeal; on cross-appeal remanded for entry of modified judgment eliminating damages for hours expended and otherwise affirmed.

---

that remittitur is not permissible in Oregon. Or Const, Art VII (amended) § 3; *State ex rel Young v. Crookham*, 290 Or 61, 68, 618 P2d 1268 (1980).

[4] Apparently, defendant assumes that, if the trial court erred in allowing the amendment, it necessarily also erred in failing to enter judgment in defendant's favor. In the light of our disposition of the assignment, we need not address the merits of that assumption.